**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

09 APR -1 AM 11: 40

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

|  |  |  |
|---|---|---|
| BRUCE LEE ENTERPRISES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | **1 : 09 -cv- 0 3 9 8 WTL -DML** |
| | ) | |
| vs. | ) | CASE NO. _____ |
| | ) | |
| MARC ECKO ENTERPRISES, A.V.E.L.A., INC., | ) | |
| and LEO VALENCIA, an Individual, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Comes now BRUCE LEE ENTERPRISES, LLC (hereinafter "BLE"), by counsel, Theodore J. Minch, and for its Complaint for Damages and Injunctive Relief as against Defendants MARC ECKO ENTERPRISES, A.V.E.L.A., INC., and LEO VALENCIA, Individually (hereinafter, unless otherwise delineated, collectively referred to as the "Defendants"), would respectfully show the court as follows:

### NATURE OF THE ACTION

1. This is an action for unfair competition and trademark infringement under federal statutes, with pendent claims for common-law trademark infringement and unauthorized commercial use of statutory and common law right of publicity. BLE seeks damages, attorneys' fees, costs, and preliminary and permanent injunctive relief.

### THE PARTIES

2. BLE is a limited liability company duly organized and existing under the laws of the State of California with its principal office at 1460 4th Street, Suite 210, Santa Monica, California 90401, UNITED STATES OF AMERICA.

3.      Defendant MARC ECKO ENTERPRISES, d/b/a Mark Eckō Cut & Sew (hereinafter singularly referred to as "MEE") is, upon information and belief, a corporation organized and existing under the laws of State of New Jersey with its principal place of business at 40 West 23rd Street, 3rd Floor, New York, New York 10010.

4.      Defendant A.V.E.L.A., Inc. (hereinafter singularly referred to as "AI") is a corporation organized and existing under the laws of State of Nevada with its principal place of business at 1135 Terminal Way, Number 209, Reno, Nevada 89502.

5.      Defendant LEO VALENCIA is an individual (hereinafter singularly referred to as "LV") who, upon information and belief, resides in the State of Nevada, and is located at 1135 Terminal Way, Number 209, Reno, Nevada 89502.

## JURISDICTION AND VENUE

6.      BLE and each and every one of the Defendants are citizens of different states.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331; this Court also has subject matter jurisdiction over the claims in this Complaint arising under the Lanham Act pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338, the United States Copyright Act pursuant to 17 U.S.C. §410 *et. seq.*, and various Federal common law principles. This Court has supplemental jurisdiction over BLE's state law claims pursuant to 28 U.S.C. § 1367(a).

8.      This Court has personal jurisdiction over Defendants, as Defendants have maintained systemic contact with the State of Indiana and committed acts that have caused tortious injury in this Judicial District pursuant to Ind. Code §32-36-1 *et. seq*.

9.      Defendants have conducted business in Indiana through direct catalogue solicitations, directly in and through retail establishments located in Indiana, and through the

2

easy availability of Defendants' products in the State of Indiana; in conducting its business in Indiana, Defendants have caused injury by an act and series of acts performed in Indiana and, in addition, Defendants have caused injury in Indiana resulting from acts done outside of Indiana through Defendants' conducting and soliciting business in Indiana and by deriving substantial benefit from goods, services, and information rendered in the State of Indiana, including but not limited to transporting or causing to be transported into the State of Indiana goods, merchandise, or other materials created or used in violation of BLE's interest in the herein more fully described Bruce Lee intellectual property rights. I.C. §32-36-1-9.

10.     Furthermore, Defendants have caused advertising or promotional material created or used in violation of BLE's interest in and to the Bruce Lee intellectual property rights, as more fully described herein, to be published, distributed, exhibited, or disseminated within the State of Indiana. I.C. §32-36-1-9.

11.     Venue as related to Defendants is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (b).  Since Defendants are subject to personal jurisdiction in this Judicial District, Defendants reside in this Judicial District for the purposes of 28 U.S.C. §1391.

12.     In addition to the foregoing, Defendants, as shown below, are entities that transact business within the State of Indiana and, upon information and belief, have registered to do so; therefore, pursuant to Title 23, Article 1 of the Indiana Code, the Indiana Secretary of State may be an agent for service of process.

13.     All conditions precedent to the bringing of this action have occurred or taken place and / or continue to occur.

14.     Each and every one of the Defendants maintain Internet web sites (www.marceckoenterprises.com) and / or  sell their goods via Internet sites (such as, in the case

3

of AI and LV, www.outpost.com) by which individuals, corporations, and unincorporated entities around the world, including those in the State of Indiana, can communicate with Defendants electronically. The web site offers Internet users information about Defendants, collectively, as well as the opportunity to obtain merchandise directly thereon from Defendants. The exercise of jurisdiction over Defendants, collectively, is permitted by the Indiana long arm statute, I.C. §32-36-1-1, and comports with due process.

## FACTUAL BACKGROUND AS RELATED TO THE
## BRUCE LEE PUBLICITY RIGHTS AND THE OWNERSHIP THEREOF

15.    Bruce Lee (hereinafter "LEE") was born on November 27, 1940, in San Francisco, California, son of Lee Hoi Chuen, a singer with the Catonese Opera.

16.    LEE returned with his family to Hong Kong where from infancy to the age of eighteen (18) LEE appeared in children's roles in over twenty (20) films including Golden Gate Girl (1941) and The Orphan (1960); at twelve (12) years of age, LEE attended La Salle College in Hong Kong and began training for the following five (5) years in the martial arts discipline of wing chun kung fu and in cha-cha dancing wherein, at the age of eighteen, LEE was named cha-cha champion of Hong Kong.

17.    LEE returned to the United States, San Francisco's China Town, in 1959 but later moved to Seattle, Washington where LEE studied philosophy and continued to hone his kung fu techniques; in the 1960's, while residing in Seattle, Washington, and, upon opening LEE's own school of kung fu, LEE became closely associated in the eyes of the American public with key American martial arts celebrities such as Ed Parker and Jhoon Rhee.

18.    In or about early 1964, LEE developed and utilized a trademark image which universally became so closely associated with LEE that the American and worldwide public,

4

when seeing the image, would know and understand that it stood for LEE's self-developed martial arts principles of "Using No Way as Way, Having No Limitation as Limitation," a/k/a the Core Logo®.[1]

19.   By way of LEE's self-crafted notoriety in the martial arts genre, LEE was introduced to and began working with notable Hollywood, California movie producer William Dozier; Dozier later cast LEE in LEE's first national television show as "Kato," sidekick to cartoon superhero, the Green Hornet; The Green Hornet, co-starring LEE, aired for one season (1966) though through LEE's role as Kato, LEE became a well known entertainment celebrity in America.

20.   As a result of his notoriety, LEE opened a kung fu school in Oakland, California and later opened a school in Los Angeles, California where he trained well known Hollywood celebrities such as Steve McQueen and James Coburn; it was during this time that LEE, having studied, deconstructed and customized several martial arts styles and techniques for years, began cultivating his own expression of martial arts called Jeet Kune Do®[2](which translates in English to "The Way of the Intercepting Fist").

21.   Via LEE's close relationship with McQueen and Coburn, LEE landed a role as "Winslow Wong" alongside notable American movie star James Garner in Marlowe (1969); LEE's work in Marlowe was followed by several appearances as a martial arts instructor to a blind private eye in the television series Longstreet (1971) starring James Franciscus.

22.   In the early 1970's, LEE returned to Hong Kong where he was approached by film producer Raymond Chow who, intending to seize upon LEE's intense popularity amongst

---

[1] The Core Logo® is a federally registered trademark, serial numbers 2194786, 2885613, 2734084, and 2734082 and application number 77238320

[2] Jeet Kune Do® is a federally registered trademark, serial number 2,574,747.

young Chinese fans, cast LEE in the lead role in The Big Boss (a/k/a Fists of Fury) (1971); though the film was very low budget, Chinese fans flocked to theaters to see LEE, then known worldwide as a tough, young athletic hero, dispense justice with his fists and with his feet. Ultimately, The Big Boss smashed all Hong Kong box office records.

23.     LEE later starred in another Chinese movie, Fist of Fury (a/k/a Chinese Connection) (1972) and, upon the movie's release, Hong Kong streets were once again jammed with thousands of LEE's fans, all of which seemingly would not get enough of LEE's martial arts fury as captured on the big screen; Fist of Fury later went on to once again break box office records and unprecedented success in this movie genre led LEE to launch his own movie production company named Concord Productions.

24.     Utilizing Concord Productions, LEE personally wrote, directed, and acted in his next big screen success, Way of the Dragon / (a/k/a Return of the Dragon) (1972); Way of the Dragon was the movie debut for a young, up and coming American martial artist named Chuck Norris, who later went on to star in countless Hollywood film and television productions and who has become a household name in the United States movie industry.

25.     By the time Way of the Dragon was released, LEE's remarkable and meteoric success in the Orient film industry was recaptured by American movie producers; in 1972, Warner Bros. cast LEE as a secret agent who was to penetrate a secret island fortress.

26.     While LEE was involved in completing over dubs and final cuts for the 1973 Warner Bros. movie, LEE died on July 20, 1973 of cerebral edema; later, following his death, the immensely popular, cult movie favorite Enter the Dragon was released by Warner Bros.

27.     Movie fans around the world were shattered by LEE's untimely death; over thirty thousand (30,000) fans paid final tribute to LEE in Hong Kong and, at a much more private,

6

smaller ceremony in Seattle, Washington (the city where LEE began his trek toward celebrity stardom and immortality in earnest), celebrity pall bearers included Steve McQueen and James Coburn.

28.     Enter the Dragon was such a post humus success, National General Films actively distributed LEE's prior three (3) films to United States movie theaters and each became box office smashes on the American big screen.

29.     LEE was such an icon that, via the productions Game of Death (1978) and Game of Death II (1981), LEE became the first celebrity to be cast in major motion pictures after his death; LEE's fans craved for his works to such an extent, that actual footage of LEE fighting several celebrity opponents, including LEE pupil and Los Angeles Laker Hall-of-Famer, Kareem Abdul-Jabbar, was used together with a LEE look-alike character and "shadowy" camera work in the Game of Death and the Game of Death II.

30.     LEE is, without question, the greatest icon of martial arts cinema and is, unquestionably, a key figure in American popular culture; to this end, absent the unprecedented popularity of LEE's body of film works, it is arguable whether the martial arts film genre would have ever influenced mainstream Western cinema and audiences which later went on to produce Hollywood celebrities such as Chuck Norris and Steven Seagal as well as such ultra popular film genres as The Matrix triology, Laura Croft: Tomb Raider, and films starring Asian film celebrities Jackie Chan and Jet Li (in which LEE's influences are unmistakably evident).

31.     LEE was known throughout the world and to his peers as not only an amazingly gifted athlete, but as a talented actor whose albeit handful of films still left behind an indelible impression on Hollywood and modern cinema.

7

32. CONCORD MOON LP and, its general partner, CONCORD MOON, LLC, was established by LEE's family as the sole and exclusive rights holders and proprietors of any and all commercial merchandising and allied rights relating to the use of LEE's name, image, likeness, persona, signature, mannerisms, distinctive appearance, sayings, voice, and / or photographs, including but certainly not limited to various trademark registrations for the marks BRUCE LEE®[3], the Core Logo®, and JEET KUNE DO® (all foregoing intellectual property rights as associated with the late Bruce Lee, unless otherwise noted, shall hereinafter collectively be referred to as "Intellectual Property").

33. In addition to the Intellectual Property as hereinabove defined, BLE owns countless domestic and international registered trademarks and applications for the marks "BRUCE LEE," "Using No Way as Way, Having No Limitation as Limitation" a/k/a the Core logo (the "Core Mark"), "JEET KUNE DO," "JEET KUNE DO" in Japanese characters, "JUN FAN," "JUN FAN" in Chinese characters, "JUN FAN GUNG FU INSTITUTE," "JUN FAN JEET KUNE DO," "JUN FAN JEET KUNE DO" in Chinese Characters, Design mark featuring the Core Mark, and "THE BRUCE LEE EDUCATIONAL FOUNDATION."

34. On April 1, 2008, BLE was established and organized by LEE's family as the successor in interest to CONCORD MOON LP and CONCORD MOON, LLC as the sole and exclusive rights holders and proprietors of any and all commercial merchandising and allied rights relating to the Intellectual Property as herein defined.

35. BLE is duly registered with the office of the Secretary of State of California in accordance with the requirements of California Civil Code §990, and its successor legislation

---

[3] BRUCE LEE® is a federally registered trademark, serial number 3224921.

under Civil Code § 3344.1.as the successor-in-interest and sole rights holder of the Intellectual Property.

36.     BLE has expended countless resources and funds in continuously using, advertising, licensing for use, and protecting the Intellectual Property; accordingly, BLE has realized significant revenue from said use, advertisement, and licensing of the Intellectual Property.

37.     As a result of BLE's extensive marketing and sales efforts with regard to the Intellectual Property, coupled with the intense fame and celebrity attached to LEE, consumers readily identify and / or recognize the Intellectual Property as a symbol of LEE's iconic persona.

38.     To fulfill its mission as envisioned by LEE, BLE enters into selective licensing agreements for the use of the Intellectual Property by third parties and, likewise, BLE actively and aggressively pursues any and all unauthorized third party users of the Intellectual Property, such as Defendants, who seek to illegally benefit from and / or trade off the Intellectual Property to the detriment of and without prior authorization of BLE.

39.     In order to maintain LEE's legendary status and notoriety as an elite athlete, martial artist, and big screen film legend, and more specifically, in order to protect the valuable commercial reputation and good will associated with the Intellectual Property, BLE expends countless resources in the establishment and implementation of programs to develop, register, and protect the Intellectual Property, all of which serves to designate those goods and services distributed in interstate and International commerce as associated with, approved by, and emanating from BLE.

40.     The Intellectual Property is of immeasurable commercial value, has been continuously used for commercial purposes during LEE's lifetime, and has been used

9

continuously and is still presently used for commercial purposes and protected from unauthorized misuses following LEE's death.

41.    BLE has not given Defendants consent, either written or oral, express or implied, to commercially (or otherwise) utilize the Intellectual Property and / or any aspect thereof.

## DEFENDANTS' UNAUTHORIZED AND INFRINGING ACTIVITIES COMMON TO ALL COUNTS

46.    Defendant MEE, upon information and belief, a privately held company, is in the global fashion and lifestyle industries and has reported global sales of over $1.5B in 2007 and employs 1,300 employees around the world.  MEE's brands and related entities includes ecko unltd., Marc Ecko Cut & Sew, Zoo York, Complex Media, ecko red juniors apparel, Avirex, and Marc Ecko Entertainment.  Likewise, MEE licenses such well known brands as Skechers (footwear), Callanen (watches), and Kids Headquarters (kids' apparel).

47.    Upon information and belief, Defendants AI and LV have been, and continue to be, in the business or designing, manufacturing, marketing, and offering for sale in commerce clothing and other fashion-related merchandise.

48.    Each and every one of the Defendants have been, and continue to be, designing, manufacturing, marketing, and offering for sale, in commerce, T-shirts and other fashion-related merchandise bearing the Intellectual Property (hereinafter collectively referred to as the "Infringing Merchandise").

49.    Despite claims among themselves and, upon information and belief, certain third parties otherwise, Defendants maintain no rights or claims to ownership of any of the Intellectual Property including but not limited to those images of LEE used by Defendants on the Infringing Merchandise, and Defendants have not been granted permission or a license by BLE to

manufacture, distribute, or sell any product, including but not limited to the Infringing Merchandise, bearing the Intellectual Property. See Exhibits 3 - 5.

50.    On January 27, 2009, BLE placed Defendant MEE on notice that its use of the Intellectual Property on or in connection with a certain line of T-shirts as depicted in Exhibit 1 attached hereto was in direct violation of the rights in and to the Intellectual Property as claimed by BLE; on February 5, 2009, Defendant MEE replied that it had received the rights to said Intellectual Property from Defendants AI and LV. See Exhibit 1.

51.    On January 29, 2009, Defendants AI and LV were placed on notice that their use of the Intellectual Property on or in connection with a certain line of T-shirts as depicted in Exhibits 3 – 5 attached was in direct violation of the rights in and to the Intellectual Property as claimed by BLE; to date, neither AI nor LV have responded to BLE's January 29, 2009 correspondence. See Exhibit 2.

52.    The Infringing Merchandise designed, manufactured, marketed, and / or sold by each and every one of the Defendants bearing the Intellectual Property are substantially similar to licensed merchandise marketed and sold by BLE's licensees under license with BLE.

53.    Despite BLE's best efforts, BLE has been unable to successfully reach a settlement, without court or other formal intervention, as related to each and every one of Defendant's knowing, intentional, willful, and malicious use of the Intellectual Property without BLE's permission on and / or in connection with the Infringing Merchandise.

54.    Among other channels of trade, including but not limited to Internet sales, Defendants sell the Infringing Merchandise in certain retail locations including but not limited to Target retail stores in the Southern District of Indiana and throughout the United States.

55. Upon information and belief, Defendants have been, and continue to be, designing, manufacturing, distributing, and / or selling the Infringing Merchandise bearing the Intellectual Property to various retailers, including but not limited to Target stores (the "Infringing Merchandise").

56. Defendants actions in manufacturing, distributing, and selling the Infringing Merchandise have caused, and continues to cause, confusion among consumers who are led to believe that the Infringing Merchandise is authentic and licensed BLE merchandise, when in fact it is not.

57. Based on, among other things, the written contact made by BLE with Defendants and the various demands contained in said communications, each and every one of the Defendants is fully aware that they lack the authority or license to design, manufacture, distribute, sell, exhibit, or market the Infringing Merchandise.

58. By continuing to design, manufacture, distribute, and / or sell the Infringing Merchandise, each and every one of the Defendants were and are attempting to trade on the goodwill established by BLE in the Intellectual Property.

59. By continuing to design, manufacture, distribute, and / or sell the Infringing Merchandise, each and every one of the Defendants were and are attempting to create an association between the Infringing Merchandise and the authorized LEE merchandise sold and licensed through BLE.

60. Upon information and belief, each and every one of the Defendants manufactured, distributed, and sold the Infringing Merchandise with the bad faith intent to profit from the Intellectual Property.

61.    Upon information and belief, Defendants' continued design, manufacture, sale, distribution, exhibition, and/or marketing of the Infringing Merchandise constitutes unauthorized use of rights of publicity, federal and common-law trademark infringement, unfair competition, conversion, deception, and intentional interference with prospective economic advantage.

62.    Upon information and belief, Defendants did not believe and had no reasonable grounds to believe that the design, marketing, distribution, or sale of the Infringing Merchandise was a fair use or otherwise lawful.

63.    The foregoing illegal and infringing activities of Defendants', as more fully described hereinabove, and the resulting irreparable harm to BLE, as more fully described hereinbelow, has occurred and continues to occur, unfettered, in the State of Indiana and, more particularly, in this judicial district.

## IRREPARABLE HARM

64.    BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 63. of this Complaint for Damages and Injunctive Relief.

65.    As a result of Defendants' past and continued violations of BLE's rights to and interest in the Intellectual Property, BLE has suffered damages, including actual damages (including profits which Defendants have derived from the unauthorized use), treble or punitive damages, attorneys' fees, and costs of suit; moreover, BLE is entitled to a turnover of all infringing goods and merchandise, as more fully described herein above, currently possessed by Defendants.

66.     As a direct result of Defendants' use of the Intellectual Property, BLE will be irreparably injured in that actual and potential customers will be misled and confused regarding the source, sponsorship, and origin of Defendants' goods, services, and / or products; as such, consumers will mistakenly believe that Defendants' products which, without authorization, bear the Intellectual Property, or which products are, without prior authorization, marketed and / or advertised through the use of the Intellectual Property, originate from or are authorized, sponsored, or approved by BLE.

67.     Defendants have knowingly and intentionally infringed upon BLE's rights with intent to unfairly trade on and misappropriate the reputation and goodwill of LEE and / or the Intellectual Property which is commonly and interchangeably associated with LEE and BLE.

68.     BLE's rights in and to the Intellectual Property have been and will continue to be irreparably harmed by Defendants wrongful actions unless Defendants are enjoined from such unauthorized and infringing uses of the Intellectual Property.

69.     BLE's remedy of law is inadequate to prevent further violation of its rights by Defendants, which violation is, upon information and belief, continuing unabated despite Defendants' actual knowledge of the wrongfulness of their collective actions in this regard.

## COUNT I
## INDIANA STATE STATUTORY RIGHT OF PUBLICITY

70.     BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 69. of this Complaint for Damages and Injunctive Relief.

71.     LEE is a personality, as defined by I.C. §32-36-1-1, because LEE's name, voice, signature, photograph, image, likeness, persona, distinctive appearance, gestures, and / or mannerisms have commercial value.

72.     LEE had continuously used and authorized the use of his rights of publicity, including but not limited to the Core Mark, for commercial purpose, as defined by I.C. §32-36-1-2, during his lifetime.

73.     LEE's rights of publicity have been transferred to BLE at least as early as 2001, via assignment from CONCORD MOON, LLP; as such, BLE is a real party in interest and may duly exercise and enforce these rights pursuant to I.C. §32-36-1-17.

74.     Each and every one of the Defendants, by their respective activities described herein, have used aspects of LEE's right of publicity for a commercial purpose in violation of I.C. § 32-36-1-6 without first having obtained previous written consent of BLE.

75.     Defendants have knowingly, maliciously, and intentionally engaged in conduct prohibited by I.C. § 32-36-1-9.

76.     BLE's rights have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from further continued use of the Intellectual Property.

77.     BLE's remedy of law is inadequate to prevent further violation of its rights.

## COUNT II
## CALIFORNIA STATE STATUTORY RIGHT OF PUBLICITY

78.     BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 77. of this Complaint for Damages and Injunctive Relief.

15

79.     LEE's rights of publicity have been transferred to BLE at least as early as 2001, via assignment from CONCORD MOON, LLP; as such, BLE is a real party in interest and may duly exercise and enforce these rights pursuant to Cal.Civ.Code §990.

80.     Because each and every one of the Defendant's have used LEE's name, voice, signature, photograph, image, likeness, persona, distinctive appearance, gestures, and / or mannerisms on or in connection with the Infringing Merchandise, without BLE's prior authorization, each and every one of Defendants have violated Cal.Civ.Code §3344.

81.     Each and every one of Defendant's unauthorized use of the Intellectual Property without BLE's prior authorization was so directly connected with Infringing Merchandise itself that consent to such use of the Intellectual Property by BLE is required under Cal.Civ.Code §3344.

82.     Defendants have knowingly, maliciously, and intentionally engaged in conduct prohibited by Cal.Civ.Code §3344.

83.     BLE's rights have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from further continued use of the Intellectual Property.

84.     BLE's remedy of law is inadequate to prevent further violation of its rights.

## COUNT III
## COMMON LAW RIGHTS OF PUBLICITY

85.     BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 84. of this Complaint for Damages and Injunctive Relief.

86.     LEE was and remains, post humulously, a celebrity with a unique identity and persona that LEE commercially exploited during his lifetime.

16

87.     LEE's persona comprises a combination of many features, including but not limited to his dynamic iconic martial arts persona, and was carefully cultivated by LEE and shaped by the Hollywood and Hong Kong motion picture industries throughout LEE's career; it is this persona by which LEE is globally recognized and remembered.

88.     Each and every one of Defendant's unauthorized commercial exploitation of the Intellectual Property constitutes a violation of the common law of publicity rights assigned to BLE by LEE'S heirs.

89.     BLE's rights have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from the use of the Intellectual Property.

90.     BLE's remedy of law is inadequate to prevent further violation of its rights.

## COUNT IV
## TRADEMARK INFRINGEMENT UNDER
## SECTION 32(1) OF THE LANHAM ACT

91.     BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 90. of this Complaint for Damages and Injunctive Relief.

92.     Defendants' illegal use of the Intellectual Property infringes upon BLE's exclusive rights in its federally and internationally registered trademarks and, as such, is in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) in that said conduct is likely to cause confusion and to cause the relevant public to mistakenly believe that there is a connection, association, or affiliation between BLE, LEE, and Defendants.

93.     Defendants' conduct as challenged herein by BLE is intentional, malicious, and willful.

17

94.     BLE's rights have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from the use of the Intellectual Property.

95.     BLE's remedy of law is inadequate to prevent further violation of its rights.

## COUNT V
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(A)

96.     BLE incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 95. of this Complaint for Damages and Injunctive Relief.

97.     BLE owns, and Defendants have and continue to intentionally and maliciously use, in interstate commerce, the Intellectual Property in a manner that is likely to and has caused confusion, mistake, and / or deception in the marketplace as to the origin, sponsorship, or approval of the Infringing Merchandise by BLE.

98.     Defendants' activities constitute use in interstate and international commerce of a term, name, symbol, or device, or a false designation of origin, or a false or misleading description or representation of fact, which is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of the Infringing Merchandise with LEE, and, further, as to the origin, sponsorship, endorsement, or approval of the Infringing Merchandise by BLE.

99.     Defendants' activities have been willful, deliberate, and intentional, thereby causing a likelihood of confusion, and such uses were likewise done with the intent to trade upon the goodwill and reputation of LEE and BLE.

100.    BLE's business, goodwill, and reputation have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from their exploitative and infringing commercial business practices.

18

101.   BLE's rights have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from the use of the Intellectual Property.

102.   BLE's remedy of law is inadequate to prevent further violation of its rights.

103.   Defendants' activities constitute unfair competition in violation of the Federal Lanham Act, 15 U.S.C. § 1125(A).

**COUNT VI**
**COMMON LAW UNFAIR COMPETITION**

104.   BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 103. of this Complaint for Damages and Injunctive Relief.

105.   Defendants have knowingly, intentionally, and maliciously incorporated and used the Intellectual Property on or in connection with the Infringing Merchandise in direct violation of the common law of the State of Indiana.

106.   Defendants' actions constitute misappropriation of the Intellectual Property as owned and enforced by BLE.

107.   Defendants' actions with regard to Defendants' unauthorized use of the Intellectual Property on or in connection with the Infringing Merchandise were taken by Defendants knowingly, willfully, and intentionally and with full knowledge of the proprietary nature of the Intellectual Property as owned, licensed, and protected by BLE.

108.   BLE's business, goodwill, and reputation have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from Defendants' exploitative and infringing commercial business practices.

109.   BLE's rights have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from the use of the Intellectual Property.

110.   BLE's remedy of law is inadequate to prevent further violation of its rights.

### COUNT VII
### UNJUST ENRICHMENT

111.   BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 110. of this Complaint for Damages and Injunctive Relief.

112.   At the expense of and detriment to and without the prior express (or implied) authorization of BLE, each and every one of the Defendants has been unjustly enriched through their knowing, intentional, willful, and malicious actions of using the Intellectual Property.

113.   BLE's business, goodwill, and reputation have been and will continue to be irreparably harmed by each and every one of the Defendants unless Defendants are preliminarily enjoined from their exploitative and infringing commercial business practices.

114.   BLE's remedy at law is inadequate to prevent further violation of its rights.

### COUNT VIII
### CONVERSION

115.   BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 114. of this Complaint for Damages and Injunctive Relief.

116.   Defendants, by engaging in the conduct described above, have exerted unauthorized control over the property of another in violation of I.C. § 35-43-4-3; to wit, the Intellectual Property.

117.   Defendants have irreparably harmed BLE by engaging in conversion as described herein above.

118.   Pursuant to I.C. § 34-24-3-1, BLE is entitled to the following:  treble damages, costs of the action, reasonable attorneys' fees, actual travel expenses, reasonable amount for loss of time, actual direct and indirect expenses for loss of time, and all other reasonable costs of collection.

## COUNT IX
## DECEPTION

119.   BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 118. of this Complaint for Damages and Injunctive Relief.

120.   By engaging in the conduct as herein described and complained of, Defendants have disseminated to the public products and / or advertisement that Defendants know are false, misleading, or deceptive, with intent to promote the purchase or sale of the Infringing Products.

121.   On the basis of Defendants' unlawful and illegal actions as herein complained of, Defendants have committed deception as defined under Indiana law at I.C. § 35-43-5-3(a)(6).

122.   Defendants' commission of deception has proximately caused BLE to suffer damages in a sum as yet to be ascertained but which damages continue to accrue and accumulate.

123.   BLE will continue to be irreparably harmed by Defendants unless Defendants are preliminarily enjoined from their unlawful business practices which constitute deception under Indiana law.

124.   BLE's remedy at law is inadequate to prevent further violation of its rights.

## COUNT X
## INDIANA CRIME VICTIMS' ACT

125.   BLE hereby incorporates by reference as though set forth fully herein, the allegations made in Paragraphs 1. through 124. of this Complaint for Damages and Injunctive Relief.

126.   Under the Indiana Crime Victims' Act, Ind. Code § 34-24-3-1, a person that suffers pecuniary loss as a result of a violation of Ind. Code § 35-43 *et seq.*, may bring a civil action as against the person who caused the loss for treble damages, costs of the action, and reasonable attorneys' fees.

127.   Defendants have violated Ind. Code § 35-43 through their knowing, intentional, willful, and malicious commission of the following offenses: a. "Conversion" as defined in Ind. Code § 35-43-4-3; and b. "Deception" as defined in Ind. Code § 35-43-5-3.

128.   BLE is a victim of Defendants' knowing, intentional, willful, and malicious criminal violations and, as a result, have suffered actual pecuniary damages.

129.   Accordingly, BLE is entitled to an award of those actual damages as well as statutory treble damages, corrective advertising damages, costs, and reasonable attorneys' fees.

### JURY DEMAND

130.   BLE hereby requests that these matters be tried by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BLE prays this Court for the following relief:

A.      An award of actual damages, including profits, derived from the unauthorized use of the Intellectual Property pursuant to I.C. § 32-36-1-10(1)(B), Cal.Civ.Code § 3344, and the common law;

B.      An award of actual damages, including profits, derived from unauthorized use of the Intellectual Property pursuant to 15 U.S.C. §1125(a) and the common law;

C.      An award of actual damages, including profits, derived from unauthorized use of the Intellectual Property pursuant to the common law;

D.      An award of treble damages for Defendants' knowing, willful, and / or intentional unauthorized use of the Intellectual Property pursuant to I.C. §32-36-1-10(2) and, likewise pursuant to I.C. §34-24-3-1;

E.      An award of reasonable attorneys' fees, costs, expenses (including but not necessarily limited to actual travel expenses, reasonable loss of time, actual and indirect expenses for said loss of time), and / or all other reasonable costs of collection as related to this action and pursuant to I.C. §32-36-1-12(1) and I.C. §34-24-3-1;

F.      An order preliminarily and permanently enjoining the Defendants and / or their franchisees, retailers and / or distributors to subsequently destroy said products upon Defendants' receipt thereof from the unauthorized use of the Intellectual Property pursuant to I.C. § 32-36-1-12(1) and the common law;

G.    An order directing Defendants to destroy any and all products in Defendants' possession which products may bear the Intellectual Property and to recall any and any and all products featuring the Intellectual Property in the possession of Defendants' franchisees, retailers and / or distributors, and likewise, to subsequently destroy said products upon Defendants' receipt thereof;

H.    An order directing Defendants' franchisees, retailers and / or distributors to which any and all products featuring the Intellectual Property may have been distributed, to either return said products to Defendants for destruction or to voluntarily destroy all said products in Defendants' franchisees, retailers and / or distributors' respective possession; and

J.    Any and all other just, proper, and equitable relief in the premises.


Dated:  McCordsville, Indiana
        March 30, 2009

                              Respectfully submitted,



                              Theodore J. Minch, 18798-49
                              SOVICH MINCH, LLP
                              Attorneys for
                                   BRUCE LEE ENTERPRISES, LLC
                              10099 Chesapeake Drive, Suite 100
                              McCordsville, Indiana 46055
                              (317) 335-3601 (t)
                              (317) 335-3602 (f)
                              tjminch@sovichminch.com