USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __31 MAR 2011__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

BRUCE LEE ENTERPRISES, LLC,

    Plaintiff,

-v-                                      No. 10 Civ. 2333 (LTS)

A.V.E.L.A., INC. et al.,

    Defendants.

------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Bruce Lee Enterprises, LLC ("BLE") brings this action against Defendants A.V.E.L.A., Inc. ("Avela"), Leo Valencia ("Valencia"), Urban Outfitters, Inc. ("Urban"), and Target Corporation ("Target") (collectively, "Defendants"), seeking damages and equitable relief for the alleged unauthorized manufacture and sale of t-shirts bearing images of Bruce Lee ("Lee") owned by Plaintiff. The Second Amended Complaint ("SAC") asserts claims for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Lanham Act") and New York state common law. The SAC also asserts claims for infringement of publicity rights under California state statutory and common law and unjust enrichment under New York state common law.[1] Defendants move to dismiss the SAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. The Court has jurisdiction of Plaintiff's federal claim pursuant

---

[1] As the parties agree in their submissions that California law applies to the common law publicity rights claim and New York law applies to the remaining common law claims, the Court need not perform a choice of law analysis.

to 28 U.S.C. § 1331 and supplemental jurisdiction of its state law claims pursuant to 28 U.S.C. § 1367.

For the following reasons, the Court denies the motion to dismiss the SAC for lack of personal jurisdiction. The Court grants Defendants' motion to dismiss the common law publicity rights claim as to all Defendants and the common law unfair competition claim as to Urban and Target, and denies the motion in all other respects.

## BACKGROUND

The following facts alleged in the SAC are taken as true for the purposes of this motion practice. Martial artist and film star Lee died in 1973, leaving behind many registered trademarks as well as publicity and other intellectual property rights, including rights in Lee's name, image, likeness, persona, distinctive appearance, and photographs ("Lee Intellectual Property"). (SAC ¶¶ 23, 29, 32.) Lee's family created Concord Moon LP and its general partner Concord Moon, LLC, after Lee's death as the sole and exclusive rights holders of the Lee Intellectual Property. (Id. ¶¶ 29, 65.) On April 1, 2008, Lee's family established BLE as the successor-in-interest to the Concord Moon entities and BLE is now the sole and exclusive rights holder of the Lee Intellectual Property. (Id. ¶ 30.) "The L[ee] Intellectual Property is of immeasurable commercial value." (Id. ¶ 37.) BLE "expends countless resources in the establishment and implementation of programs to develop, register, and protect the L[ee] Intellectual Property, all of which serve to designate those goods and services distributed in interstate and [i]nternational commerce as associated with, approved by, and emanating from BLE." (Id. ¶ 36.) BLE licenses the Lee Intellectual Property for use by select third parties in addition to its own use. (Id. ¶¶ 33, 35.) BLE realizes significant revenue from the use,

advertisement, and licensing of the Lee Intellectual Property. (Id. ¶¶ 33-35.) Lee's fame coupled with BLE's extensive marketing and sales of the Lee Intellectual Property have led "consumers to readily identify and / or recognize the L[ee] Intellectual Property as a symbol of Lee's iconic persona." (Id. ¶ 34.)

The SAC alleges that Defendants Avela and Valencia design, manufacture, market, and sell clothing and other fashion products and that they used and continue to use the Lee Intellectual Property on their products without BLE's consent. (SAC ¶¶ 38-39, 52, Exs. 2-6.) On January 29, 2009, BLE sent a cease and desist letter to Valencia, doing business as Avela, asserting that Valencia and Avela had used Lee's name and likeness on t-shirts in violation of BLE's rights in the Lee Intellectual Property. (Id. ¶ 45, Ex. 2.) BLE asserted in the letter that Valencia had marketed, advertised, and sold t-shirts using Lee's name and likeness on urbanoutfitters.com and other Web sites and in Target retail stores. (Id. Ex. 2.) Neither Avela nor Valencia responded to the letter. (Id. ¶¶ 45, 48).[2] The complaint alleges that all four Defendants reaped profits from the sale of t-shirts bearing Lee's image at Urban and Target retail stores in California and on Urban and Target's Web sites, among other locations, and that Defendants had no reason to believe they had the right to use Lee's image on the t-shirts. (Id. ¶¶ 40-41, 48, 54, 56, 59; id. Exs. 2, 6.) Defendants' products are "substantially similar" to products marketed and sold by BLE's licensees. (Id. ¶ 46.)

---

[2] On January 27, 2009, BLE sent written notice to Ecko.Complex, LLC, doing business as Ecko Unltd ("Ecko"), stating that Ecko had used Lee's image on t-shirts in violation of BLE's rights in the Lee Intellectual Property. (SAC ¶ 44.) Ecko responded on February 5, 2009, that Avela and Valencia had licensed Ecko to use the images. (Id. ¶ 44, Ex. 1.) BLE initially brought suit against Ecko but voluntarily dismissed its claims against Ecko; Ecko is no longer a party to this litigation.

Plaintiff originally filed suit in the Southern District of Indiana. All Defendants, as well as former Defendant Ecko, moved to dismiss for lack of personal jurisdiction or improper venue, or to transfer the action to the Southern District of New York or the District of Nevada. Bruce Lee Enters., LLC v. Ecko.Complex, LLC, No. 09-cv-0398(WTL), 2010 WL 989909 at *1 (S.D. Ind. Mar. 16, 2010). The Hon. William T. Lawrence granted Defendants' motion to transfer the action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Id. at *4.

Plaintiff filed the SAC on June 25, 2010.

### DISCUSSION

Personal Jurisdiction

Defendants move to dismiss the complaint as against Defendants Valencia and Avela for lack of personal jurisdiction.[3] Plaintiff argues that Defendants are estopped from asserting lack of personal jurisdiction because, when Defendants moved to transfer the action to this district, they took the position that this Court had personal jurisdiction over Defendants.

28 U.S.C. § 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Supreme Court has interpreted the phrase "where it might have been brought" to mean a district or division where the plaintiff could have filed suit at the time of the original filing. Hoffman v. Blaski, 363 U.S. 335, 343–44 (1960); see also Van Dusen v. Barrack, 376 U.S. 612, 619–20 (1964); 17 James Wm. Moore et al., Moore's

---

[3] Defendants initially contested personal jurisdiction over all Defendants. (Defs.' Mem. at 5–7). In their reply memorandum, Defendants only contest personal jurisdiction over Avela and Valencia, thereby conceding jurisdiction over Urban and Target. (Defs.' Reply Mem. at 9).

Federal Practice § 111.12 (3d ed. 2007). Several judges of this court have interpreted this requirement to mean that, at the time a plaintiff originally filed suit, the transferee court must have had subject matter jurisdiction and personal jurisdiction over the defendants and that venue would have been proper. See, e.g., Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) ("For the purposes of section 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." (citation omitted)); PI, Inc. v. Ogle, 932 F. Supp. 80, 85 (S.D.N.Y. 1996) (finding as part of its section 1404(a) analysis that defendant failed to show that proposed transferee district had personal jurisdiction over him when the action commenced); Anglo Am. Ins. Group, P.L.C. v. CalFed Inc., 916 F. Supp. 1324, 1330 (S.D.N.Y. 1996) ("To transfer under § 1404(a), the movant must show . . . that the [transferee] district has personal jurisdiction over [defendant] on the date of the commencement of this claim."). District judges in the Seventh Circuit, including the Southern District of Indiana where the transfer motion in this case was decided, have come to the same conclusion. See, e.g., Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc., 512 F. Supp. 2d 1169, 1172 (W.D. Wis. 2007) ("The [Supreme] Court reasoned that 'where it might have been brought' means that the plaintiff has to have had the right to bring its case in the transferee district, which would require proper venue and personal jurisdiction over the defendants in the transferee district." (citing Hoffman, 363 U.S. at 344)); Indianapolis Motor Speedway Corp. v. Polaris Indus., Inc., No. IP99-1190-C-B/S, 2000 WL 777874, at *1 (S.D. Ind. June 15, 2000) ("Section 1404(a) allows transfer only if venue and personal jurisdiction are proper in the transferee forum." (citing Hoffman, 362 U.S. at 343-44)).

Under the equitable doctrine of judicial estoppel,

> [w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (alteration in original) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). The Court identified "several factors" to consider in deciding when to apply the doctrine:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create a perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Id. at 750–51 (internal quotation marks and citations omitted). The Court noted that this list of factors did not establish "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 751.

The Second Circuit has stated that judicial estoppel applies "where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." Stichting v. Schreiber, 407 F.3d 34, 45 (2d Cir. 2005); see also Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004); Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999). The Second Circuit further "limits the doctrine of judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir. 1997) (citing Bates v. Long Island R.R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993)); see also In re Adelphia Recovery Trust, No. 09-0799-bk, 2011 WL 420428 at

*14 (2d Cir. Feb. 8, 2011) ("This latter requirement means that judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements.").

The judicial estoppel criteria are met in the instant case because 1) Defendants now argue that this Court lacks personal jurisdiction, contradicting their position in the prior proceeding in the Southern District of Indiana that transfer to this Court would be proper, and 2) the Southern District of Indiana adopted that prior position in granting the motion to transfer. As to the first criterion, § 1404(a) requires that a transferee court have personal jurisdiction over defendants for a judge to approve a transfer. In arguing for transfer to the Southern District of New York, Defendants necessarily, although implicitly, argued that this Court had personal jurisdiction over them at the time Plaintiff originally filed suit. Defendants now assert that this Court lacks personal jurisdiction, a position "clearly inconsistent" with that taken in Indiana. New Hampshire, 532 U.S. at 749. Second, by granting the motion to transfer from Indiana to New York, Judge Lawrence adopted Defendants' prior position because, in determining that transfer to this Court was appropriate, he must have found that this Court had personal jurisdiction over Defendants. Defendants are estopped from now arguing that this Court lacks personal jurisdiction, and their motion is denied insofar as it seeks dismissal on that ground.

Motion to Dismiss for Failure to State a Claim

On a motion to dismiss a complaint for failure to state a claim, the Court accepts the factual allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of elements

of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citation omitted).

Claims Against Defendant Valencia

Proffering evidence that Defendant Valencia did not engage in any relevant conduct directly but, rather, was merely a shareholder of the Avela corporate entity, Defendants argue that Plaintiff's claims against Valencia should be dismissed because the SAC does not allege any basis for piercing the corporate veil. The SAC includes allegations, which are taken as true for purposes of this motion practice, that Valencia "ha[s], and continue[s] to be, manufacturing, marketing, and offering for sale, in commerce, T-shirts and other fashion-related merchandise bearing the LEE Intellectual Property" (SAC ¶ 42), and that Valencia has been conducting such activity throughout the United States (id. ¶ 49). These allegations of personal involvement in the alleged offensive conduct are sufficient to support the assertions of claims against Valencia. Factual issues as to the nature or extent of Valencia's actual activities are for a later stage of the litigation.

Defendants argue for the dismissal of each Count of the SAC; the Court reviews each Count separately.

Count III – Lanham Act § 43(a) (15 U.S.C. § 1125(a))

Defendants argue that Plaintiff fails to state a claim under section 43(a) of the Lanham Act because Plaintiff does not adequately explain Defendants' infringing activities or which marks Defendants have used in commerce to cause consumer confusion.

Plaintiff's Lanham Act claim is properly understood as a claim of false endorsement. To state a claim for false endorsement under section 43(a)(1)(A), Plaintiff must allege "that the defendant, (1) in commerce, (2) made a false or misleading representation of fact

(3) in connection with goods or services (4) that is likely to cause consumer confusion as to origin, sponsorship, or approval of the goods or services." Burck v. Mars, Inc., 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008). "Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product." ETW Corp. v. Jierh Pub., Inc., 332 F.3d 915, 925 (6th Cir. 2003). "The 'mark' at issue is the plaintiff's identity." Id. at 926 (quoting Landham v. Lewis Galoob Toys, Inc., 227 F.3d 619, 626 (6th Cir. 2000)). See also Parks v. La Face Records, 329 F.3d 437, 447 (6th Cir. 2003) ("[C]ourts routinely recognize a property right in celebrity identity akin to that of a trademark holder under § 43(a)."); White v. Samsung Elecs. Am., Inc., 971 F.2d 1395, 1400 (9th Cir. 1992) ("In cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona."); 5 J. Thomas McCarthy on Trademarks and Unfair Competition § 28:15 (4th ed. 2011).

Courts that have considered the issue have found that use of a deceased celebrity's persona can support a false endorsement claim under the Lanham Act. See Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1018 (3d Cir. 2008) (analyzing a celebrity estate's false endorsement claim under 43(a)(1)(A) of the Lanham act "because Facenda's voice is a distinctive mark, the Estate owns the mark, and 'The Making of Madden NFL 06' allegedly creates a likelihood of confusion that Facenda's Estate" endorsed the product); Cairns v. Franklin Mint Co., 24 F. Supp. 2d 1013 (C.D. Cal. 1998) ("The phrase 'another person' in § 43(a)(1)(A) indicates that Congress selected language broad enough to encompass a claim by a deceased celebrity's [e]state or by any celebrity's assignee." (internal quotation marks omitted)), aff'd mem., 216 F.3d 1082 (9th Cir. 2000); Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc., 688 F. Supp. 2d 1148 (D. Nev. 2010) (finding genuine issues of material fact precluding

summary judgment on false endorsement claim brought by owners of Bob Marley's name as to use of Marley's likeness on defendants' t-shirts).

Plaintiff alleges that Defendants, without BLE's consent, made and sold t-shirts bearing Lee's image on Urban, Target, and other Web sites and in Urban and Target stores. (SAC ¶¶ 40–41, 48.) Exhibits 4 and 5 to the SAC show t-shirts bearing images of Lee allegedly owned by BLE, with Avela labels. Exhibit 6 shows a screen shot of Urban's Web site advertising for sale two t-shirts with images of Lee allegedly owned by BLE. Plaintiff need not allege trademark rights in a particular image of Lee because the mark at issue is Lee's persona. Plaintiff has sufficiently alleged ownership of Lee's persona. (See Id. ¶¶ 15, 29-31 34.) Even if Plaintiff had to allege a specific trademark, exhibits 3–6 show particular images of Lee allegedly used by Defendants without BLE's consent.

Neither must Plaintiff identify its own specific goods or services that are similar to the t-shirts at issue in order to allege sufficiently a likelihood of confusion. Plaintiff alleges that it "expends countless resources in the establishment and implementation of programs to develop, register, and protect the L[ee] Intellectual Property [(a term that the SAC defines as including Lee's persona)], all of which serve to designate those goods and services distributed in interstate and [i]nternational commerce as associated with, approved by, and emanating from BLE." (Id. ¶¶ 29, 36.) According to Plaintiff, "[t]he Infringing Merchandise designed, manufactured, marketed, and / or sold by . . . the Defendants bearing the LEE Intellectual Property are [sic] substantially similar to licensed merchandise marketed and sold by BLE's licensees . . . ." (Id. ¶ 46.) These allegations adequately plead a likelihood of confusion. Plaintiff's SAC thus pleads sufficiently a Lanham Act false endorsement claim.

Count IV – Common Law Unfair Competition

"The essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" Rosenfeld v. W.B. Saunders, A Division of Harcourt Brace Jovanovich, Inc., 728 F. Supp. 236, 249–50 (S.D.N.Y. 1990) (quoting Computer Assocs. Int'l, Inc. v. Computer Automation, Inc., 678 F. Supp. 424, 429 (S.D.N.Y. 1987)), aff'd, 923 F.2d 845 (2d Cir. 1990).

Plaintiff has plead a likelihood of confusion, as explained in connection with the Lanham Act claim. As to bad faith, Plaintiff alleges that Avela and Valencia continued to make and sell t-shirts after BLE sent a cease and desist letter informing them that they were violating BLE's rights in the Lee Intellectual Property. Plaintiff asserts that Urban and Target sold the t-shirts "with the bad faith intent to profit from [their] unauthorized use of the L[ee] Intellectual Property" and that, based on the facts alleged in the SAC, "Defendants collectively did not actually believe and had no reasonable grounds to believe that the design, marketing, distribution, or sale of the Infringing Merchandise was" permitted. (SAC ¶¶ 54, 56.) These assertions, coupled with the cease and desist letter, adequately allege bad faith on the part of Avela and Valencia. In contrast, the SAC concludes that Target and Urban acted in bad faith without proffering any facts to make that conclusion plausible. Because Plaintiff has made only conclusory allegations of bad faith against Urban and Target, Count IV will be dismissed as against those defendants.

Count I – California Statutory Right of Publicity

Defendants argue that the statutory right of publicity claim fails because Plaintiff does not allege Lee's domicile at death or any infringing acts in California. California's post-

mortem right of publicity statute provides that

> [a]ny person who uses a deceased personality's name, voice, signature, photograph, or likeness in any manner, on or in products, merchandise or goods . . . without prior consent from the person or persons [to whom the right of consent has been transferred] shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civil Code § 3344.1(a)(1). The infringing acts must occur in California. Cal. Civil Code § 3344.1(n). The SAC alleges BLE's ownership of the rights in question, and that BLE is a California entity with its principal place of business in California. Facts going to domicile of the putative owner are thus plead sufficiently; any disputes as to the location or relevance of the decedent's domicile as of the time of his death, or as to BLE's status, can be resolved at a later stage of this litigation.

The SAC alleges that "each and every one of the Defendants has sold the Infringing Merchandise in certain retail locations including but not limited to Urban Outfitters and Target retail stores throughout the United States including but not necessarily limited to, California." (SAC ¶ 48.) Plaintiff thus alleges infringing acts in California. Defendants' motion to dismiss will be denied with respect to Count I.

### Count II – Common Law Right of Publicity

Defendants rightly assert that California does not recognize a common law post-mortem right of publicity. See Lugosi v. Universal Pictures, 603 P.2d 425 (CA 1969); see also McCarthy, supra, at § 28:30. Therefore, Plaintiff's common law right of publicity claim must be dismissed.

### Count V – Unjust Enrichment

Defendants argue that Plaintiff has failed to state a claim for unjust enrichment because Defendants cannot benefit at Plaintiff's expense if Plaintiff does not own rights to the

Lee Intellectual Property. As explained in connection with Plaintiff's Lanham Act claim, the SAC pleads facts sufficient to support its claims of ownership, infringement and confusion. Defendants' motion will be denied insofar as it seeks dismissal of Count V.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the SAC for lack of personal jurisdiction is denied. Their motion to dismiss the SAC for failure to state a claim is granted insofar as Count II is dismissed in its entirety and Count IV is dismissed as against Defendants Target and Urban, and is denied in all other respects. This Memorandum Opinion and Order resolves docket entry no. 95.

SO ORDERED.

Dated: New York, New York
March 31, 2011

LAURA TAYLOR SWAIN
United States District Judge