UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
BRUCE LEE ENTERPRISES, LLC                    :
                                              :
      Plaintiff,                              :
                                              :
      vs.                                     :   CASE NO. 1:10-cv-2333 AJN / AJP
                                              :
A.V.E.L.A., INC., and LEO VALENCIA,           :
an Individual, URBAN OUTFITTERS, INC., and    :   THE HONORABLE
TARGET CORPORATION,                           :       ALISON J. NATHAN
                                              :
      Defendants.                             :
-------------------------------------------------------------------X

## BRUCE LEE ENTERPRISES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND III - V OF THE SECOND AMENDED COMPLAINT AND ON COUNTS I AND II OF DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

SOVICH MINCH, LLP
10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Telephone:  317.335.3601
Facsimile:  317.335.3602

Attorneys for Plaintiff
      Bruce Lee Enterprises, LLC

On the Brief:  Theodore J. Minch, Esq. (IN # 18798-49)
                Bonnie L. Mohr, Esq.

# Table of Contents

Table of Contents

Table of Authorities

I.      PRELIMINARY STATEMENT.      1

II.      PROCEDURAL BACKGROUND.      4

III.      STATEMENT OF UNDISPUTED FACTS.      5

IV.      SUMMARY JUDGMENT STANDARD.      5

V.      ARGUMENT.      7

     A.      The Defendants Violated Cal. Civ. Code § 3344.1.      7

         1.      Bruce Lee is a "Personality" as Defined by California Law.      7

             a.      Bruce Lee's right of publicity was valuable at the time of his death.      8

             b.      Bruce Lee was a Domicile of California at the time of his death.      9

         2.      BLE is the rightful owner of the Bruce Lee Right of Publicity.      11

         3.      The Defendants engaged in acts which violated Bruce Lee's right of publicity under the California right of publicity statute.      13

             a.      AVELA and LV licensed the Bruce Lee right of publicity without BLE's permission to at least 12 producers of infringing merchandise, all of whom used the Bruce Lee right of publicity on and / or in connection with posters, t-shirts, and bobbleheads.      14

             b.      TC sold t-shirts on or in connection with the Bruce Lee right of publicity appeared in California.      15

             c.      UO sold t-shirts on or in connection with the Bruce Lee right of publicity appeared in California.      16

4.      BLE was irreparably injured as a result of Defendants'
        unauthorized commercial use of Bruce Lee's persona.                    18

B.      Both of the Counterclaims Asserted by Defendants Should be
        Resolved by Summary Judgment in Favor of BLE.                          20

        1.      BLE did not intentionally interfere with AVELA's
                legitimate contractual relations.                              20

        2.      BLE did not intentionally interfere with AVELA's
                prospective economic advantage.                                22

C.      Defendants' Design, Production, Distribution, and Sale of the
        Infringing Goods Constitutes Unfair Competition under
        15 U.S.C. §1125(a).                                                    24

D.      Each and Every One of the Defendants' Unauthorized Uses of
        Bruce Lee's Name, Likeness and / or Image Constitutes Unfair
        Competition Under the Common Law (As to Defendants AVELA
        and LV).                                                               28

E.      Defendants Were Unjustly Enriched by Their Illegal and
        Infringing Actions.                                                    29

V.      CONCLUSION.                                                            30

**Table of Authorities**

**Cases**

*A&K Railroad Materials, Inc. v. Green Bay & Western Railroad,*
    437 F.Supp. 636 (E.D.Wis. 1977)    22

*Abdul-Jabbar v. GMC*, 85 F.3d 407 (9th Cir. 1996)    26

*Ali v. Playgirl, Inc.,* 447 F.Supp. 723 (S.D.N.Y. 1978)    18

*Allen v. National Video, Inc.  Allen v. National Video, Inc.,*
    610 F. Supp. 612 (S.D.N.Y. 1985)    24, 25

*Am. Nurses' Ass'n v. Illinois,* 783 F.2d 716 (7th Cir. 1986)    8

*Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S. Ct. 2505 (1986)    6

*Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1038 (2d Cir. 1993)    11

*Burck v. Mars, Inc.,* 571 F. Supp. 2d 446, 455 (SDNY 2008)    25

*Comedy III Productions, Inc. v. Saderup,* 25 Cal.4th 387 (2001)    14

*CBS, Inc. v. Springboard International Records,* 429 F.Supp. 563 (S.D.N.Y.1976)    25

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)    5, 6

*Chris-Craft Industries. Inc. it. PiperAircraft Corp.*, 480 F.2d 341 (2d Cir.)
    *cert denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973)    22

*DiCola v. SwissRe Holding (North America), Inc.,* 996 F.2d 30 (2d Cir.1993)    6

*Dinosaur Development, Inc. v. White*, 216 Cal.App.3d 1310, 265 Cal. Rptr. 525 (1989)    30

*Dister v. Continental Group, Inc.,* 859 F.2d 1108 (2d Cir.1988)    6

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001)    14

*Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc.,* 688 F. Supp. 2d 1148 (D. Nev. 2010)    25 ,26

*Fortech, L.L.C. v. R.W. Dunteman Co., Inc.,* 366 Ill.App.3d 804,
    304 Ill.Dec. 201, 852 N.E.2d 451 (2006)    30

*Gallo v. Prudential Residential Services*, 22 F. 3d 1219, 1222 (2nd Cir. 1994)    6

*Glen Cove Assocs. v North Shore Univ. Hosp.*, 240 A.D. 2d 701 (1997),
    *lv denied* 91 N.Y.2d 801, 666 N.Y.S.2d 563,
    689 N.E.2d 533 (1997)      23

*Graham v. Med. Mut. Of Ohio,* 749 F.2d 293 (7th Cir. 2001)      18

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183,
    428 N.Y.S.2d 628, 406 N.E.2d 445 (1980)      21, 23

*Hoffman v. Captical Cities, Inc.*, 255 F.3d 1180 (9th Cir. 2001)      14

*In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070      8-11

*In the Estate of Bruce Lee also known as Bruce Siu Yung,*
    The Supreme Court of Hong Kong      11

*In re Adelphia Recovery Trust*, No. 09-0799-bk, 2011 WL 420428 at *14
    (2d Cir. Feb. 8, 2011)      11

*In re Chateaugay Corp.,* 10 F.3d 944 (2d Cir.1993)      29

*International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,*
    846 F.2d 1079 (7th Cir. 1988)      26

*Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956)      21

*James Burrough Ltd. v. Sign Of Beefeater, Inc.,* 540 F.2d 266 (7th Cir. 1976)      19

*Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619 (6thCir. 2000)      26, 27

*Lauriedale Associates, Ltd. v. Wilson,* 7 Cal.App.4th 1439, 9 Cal.Rptr.2d 774 (1992)      30

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
    106 S. Ct. 1348 (1986)      6

*Marcus v. AT&T Corp. v. American Telephone and Telegraph Company*,
    138 F.3d 46 (2nd Cir. 1998)      29

*Meridian Mutual Insurance Company v. Meridian Insurance Group, Inc.,*
    128 F.3d at 1111, 1115 (7th Cir.1997)      26

*Miller v. Schloss,* 218 N.Y. 400, 113 N.E. 337 (1916)      29

*NBT Bancorp v Fleet/Norstar Fin. Group*, 215 A.D. 2d 990, *affd* 87 N.Y.2d 614 (1996)

*Parks v. La Face Records*, 329 F.3d 437 (6th Cir. 2003)                                    17

*Processed Plastic Company v. Warner Communications, Inc.*,
    675 F.2d 852 (7th Cir. 1982)                                    19

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)                                    2

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984)                                    18

*Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217 (2nd Cir. 2008)                                    5

*Simon v. Safelite Glass Corp.*, 128 F.3d 68,72 (2d Cir. 1997)                                    11

*SK&F, Co. v. Premo Pharmaceutical Laboratories*, 625 F.2d 1055 (3d Cir. 1980)                                    25

*Strobl v. New York Mercantile Exchange,* 561 F.Supp. 379 (S.D.N.Y.1983)                                    21

*Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2004)                                    18

*Tom Oleskers Exciting World of Fashion. Inc. v. Dun & Bradstreet, Inc.*,
    16 Ill.App.3d 709, 306 N.E.2d 549 (1973),
    *rev'd on other grounds,* 61 111.2d 129, 334 N.E.2d 160 (1975)                                    22, 23

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70 (1986)                                    20, 21

*Uhlaender v. Hendricksen*, 316 F.Supp. 1277 (D. Minn. 1970)                                    18

*Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752 (N.D. Ill. 2008)                                    30

*Waits v. Frito-Lay*, 978 F.2d 1093 (9th Cir. 1992)                                    26

## Publications

*Time Magazine*, Heroes and Icons, *available at*
http://www.time.com/time/time100/heroes/index.html (last visited December 8, 2009)                                    8 ,9

*The Internet Movie Database*, Biography for Bruce Lee, *available at*
http://www.imdb.com/name/nm0000045/bio (last visited December 5, 2009)                                    10

## Rules

Fed. R. 56.1                                    5

Fed. R. 12(b)(2)                                    4

**Statutes**

| | |
|---|---|
| Cal. Civ. Code §990 | 3, 10 13,14, 23 |
| Cal. Civ. Code § 3344.1 | 2, 3, 7, 8, 11, 13, 14, 18, 23 |
| §43(a) 15 U.S.C.A. §1125(a) | 2, 4, 5, 24, 25 |
| 28 U.S.C. § 1404(a) | 4 |

**Treatises**

| | |
|---|---|
| 2 J. Thomas McCarthy, *The Rights of Publicity and Privacy*, Second Edition, §6:57, 6-109, §9:18, and §6:99 | 3 |
| 5 J. Thomas McCarthy, *Trademarks and Unfair Competition* §28:15 (4th ed. 2011) | 25, 27, 29 |
| Restatement (Third) Unfair Competition, § 46 cmt. c. | 18, 21 22 |
| W. Prosser, Torts, § 130 at 951 (4th ed. 1971) | 22 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

BRUCE LEE ENTERPRISES, LLC   :
            :
   Plaintiff,      :
            :
   vs.        :  CASE NO. 1:10-cv-2333 AJN / AJP
            :
A.V.E.L.A., INC., and LEO VALENCIA, :
an Individual, URBAN OUTFITTERS, INC., and : THE HONORABLE
TARGET CORPORATION,    :  ALISON J. NATHAN
            :
   Defendants.     :
----------------------------------------------------------------X

## BRUCE LEE ENTERPRISES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND III - V OF THE SECOND AMENDED COMPLAINT AND ON COUNTS I AND II OF DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Comes now Plaintiff, BRUCE LEE ENTERPRISES, LLC ("BLE"), by counsel,

Theodore J. Minch, and for BLE's memorandum in support of BLE's Motion for Summary

Judgment, BLE hereby respectfully says and avers as follows:

**I. PRELIMINARY STATEMENT.**

This case is ripe for summary judgment in favor of BLE on its right of publicity, unfair

competition, and the unjust enrichment claims against Defendants A.V.E.L.A., Inc. ("AVELA"),

Leo Valencia, individually ("LV"), Target Corporation ("TC"), and Urban Outfitters ("UO")

(AVELA, LV, TC, and UO may hereinafter, from time to time, be collectively referred to as

"Defendants").  BLE is likewise entitled to summary judgment on both counterclaims.

By their own admissions, it is undisputed that each and every one of the Defendants has

sold and advertised for sale merchandise bearing the name, likeness, and / or image of the late

internationally recognized movie star and martial artist, Bruce Lee in the State of California (and

elsewhere).  Dkts 92, Ex 1 – 6, 47-4, 59-1, 59-2, 97, 98, and 113, ¶137 – 163.  It is also

undisputed that none of the Defendants obtained permission from BLE, the exlusive owner and proprietor of Bruce Lee's postmortem publicity rights. Dkt. 92 at 14.; Cal. Civ. Code § 3344.1; 15 U.S.C. §1125.  Each of the Defendant's conduct has been astonishingly brazen and willful.

After this Case was transferred to this Court (at Defendants' request), Defendants filed a motion to dismiss in a seemingly desperate attempt to avoid application of the California right of publicity statute and to separate themselves from liability in this Case for their illegal actions in the commercial use of Bruce Lee's name, image, and / or likeness.  Dkt 95 – 96.

Fortunately, after the Indiana action was transferred to this Court, this Court did not again reward Defendants' unabashed attempts at forum-shopping.  In its ruling on the motion to dismiss, this Court clearly determined that the application of California's postmortem right of publicity statute is proper here because, under the operative facts, New York's choice-of-law rules require the application of California law (which does, by statute, recognize postmortem publicity rights) and mandates summary judgment in favor of BLE on Count I of the Second Amended Complaint ("SAC").  *Dkt. 92; Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989).

AVELA and LV absolutely recognize that their activities with regard to its commercial use of Bruce Lee's right of publicity and other intellectual property rights, including but not limited to trademarks and rights of association, are illegal, and therefore their continued conduct in this regard is astonishingly willful.  In fact, one need look no further than to AVELA's own standard license agreements under which it (wrongfully) licensed Bruce Lee's persona for use by third parties on or in association with a variety of products, including but not limited to t-shirts, as evidence of AVELA and LV's willful actions.  AVELA's standard boilerplate language prohibits its licensees from distributing products featuring Bruce Lee in Indiana and Tennessee because AVELA properly understands that its actions in this regard are contrary to the Indiana

and Tennessee post mortem right of publicity statutes.[1]  Declaration of Theodore J. Minch ("Minch Decl."), ¶ 3.

However, no amount of creative drafting could cover all of AVELA's tracks because AVELA likely believed that the California right of publicity statute, prior to its 2007clarification, would allow AVELA and LV to infringe on the rights of deceased celebrities (such as Bruce Lee) who died prior to the 1985 passage of the original California right of publicity statute (Cal. Civ. Code §990).  After being deliberately clarified in 2007, Cal. Civ. Code §3344.1 expressly provides that the California right of publicity statute affords protection to personalities who died prior to the 1985 passage of the original California legislation.

Likewise, as argued hereinbelow, it is undisputed that Defendant UO continued to sell the t-shirt licensed and produced by AVELA and LV long after it had been served with this lawsuit on or about September 3, 2009; Defendant UO's actions were brazen and willful, too.  Minch Decl."), ¶ 4.

On this undisputed record, each and every one of the Defendants are liable under California's right of publicity statute, at common law, under the Lanham Act, and for unjust enrichment for using Bruce Lee's persona and post mortem right of publicity for commercial purposes without obtaining the required consent or authorization from BLE.

BLE is the undisputed sole owner and holder of Bruce Lee's postmortem publicity rights (in California and anywhere else they exist) together with other intellectual property rights including but not limited to copyrights, trademarks, and rights of association, all as associated with Bruce Lee.  It is also undisputed that each and every one of the Defendants' unauthorized uses of Bruce Lee's post mortem right of publicity rights occurred in California (and elsewhere),

---

[1] It is commonly known in the deceased celebrity licensing business that Indiana and Tennessee maintain two of the broadest and most protective statutes for the protection of post mortem publicity rights.  2 J. Thomas McCarthy, *The Rights of Publicity and Privacy*, Second Edition, §6:57, 6-109, §9:18, and §6:99.

within 70 years of Bruce Lee's death (in 1973), and without the express written consent of BLE. Outside of those presented here, there are no other facts required for this court to find that each and every one of the Defendants, by their own actions, are liable to BLE for statutory damages, actual damages, and an award of costs and fees.

In sum, the undisputed evidence clearly establishes the Defendants' violations of the California right of publicity statute, §43(a) (15 U.S.C.A. §1125(a), and New York and federal law as to unjust enrichment. Likewise, the undisputed evidence clearly demonstrates that Defendants' counterclaims should fail on summary judgment.

To that end, all outstanding claims associated with this Case, both those asserted by BLE as to each and every one of the Defendants, and those asserted by AVELA in its counterclaims, should be adjudicated in BLE's favor by summary judgment.

## II.  PROCEDURAL BACKGROUND.

On April 1, 2009, BLE filed its Complaint for Damages and Injunctive Relief against Defendants Mark Ecko Enterprises, Ltd. ("Ecko")(since dismissed), AVELA and LV.  Dkt 1.

On August 12, 2009, TC and UO were added as defendants.  Dkt. 30.

On September 30, 2009, defendants Ecko, AVELA, and LV filed their Motion to Dismiss / Transfer under Fed. R. 12(b)(2) and 28 U.S.C. § 1404(a); Defendants TC and UO joined in the motion to dismiss / transfer on November 18, 2009.  Dkts 47 and 58.   On March 16, 2010, the Case was transferred to the Southern District of New York.  Dkt. 71.  On May 26, 2010, all claims as to Ecko were dismissed by BLE with prejudice.  Dkt. 84.

On June 29, 2010, BLE filed its Second Amended Complaint (the "SAC"); the SAC was pled in four counts:  infringement of the California Right of Publicity statute, Cal. Civ. Code § 3341 (Count I), infringement of the common law right of publicity (Count II), unfair competition

under 15 U.S.C. 1125(A) (Count III), common law unfair competition (Count IV), and unjust enrichment (Count V).  Dkt. 92.

Defendants filed a second motion to dismiss on August 2, 2010 whereby Defendants moved to dismiss BLE's claim under the California Right of Publicity Statute and BLE's claims in counts III - IV(Dkts. 95 – 99); Defendants' motion to dismiss was filed under Fed. R. 12(b)(1) (lack of personal jurisdiction) and 12(b)(6) (failure to state a claim).  The Court denied Defendants' motion to dismiss, in part, on March 31, 2011.  Dkt. 111.  Specifically this Court determined that Defendants were estopped from asserting this Court lacked personal jurisdiction over Defendants and, though Count II (as to all Defendants) and Count IV (as to TC and UO) were dismissed, the Court determined that BLE sufficiently stated a claim for relief on Counts I, III, and IV (as to Defendants AVELA and LV).  Dkt 111 at 7, 8-13.

On May 10, 2011 Defendants filed their Answer, Affirmative Defenses, and Counterclaims to the SAC (the "Answer").  Dkt. 113.  In the Answer, Defendants asserted two counterclaims: interference with contractual relations (count I) and intentional interference with economic advantage (count II).  BLE denied the counterclaims in its reply filed June 15, 2011. Dkt 122.

## III.   STATEMENT OF UNDISPUTED FACTS.

The undisputed facts are set forth in the accompanying Statement of Undisputed Facts and are used in the argument section herein; they will not be separately repeated here.

## IV.   SUMMARY JUDGMENT STANDARD.

Under Fed. R. 56, summary judgment should be granted when there are no genuinely disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2nd Cir. 2008) *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);

*Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50, 106 S. Ct. 2505, 2509-12 (1986). A disputed fact is "material" only if, based on that fact, a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Celotex Corp. v. Catrett*, 477 U.S. at 322.

Also, a moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. *Gallo v. Prudential Residential Services*, 22 F. 3d 1219, 1222, 1224 (2nd Cir. 1994) *citing*; *DiCola v. SwissRe Holding (North America), Inc.,* 996 F.2d 30, 32 (2d Cir.1993). When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and summary judgment is proper. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988).

Once the movant submits facts demonstrating it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party who must then "do more than simply show that there is some metaphysical doubt as to the material facts" in order to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553 (opposing party must "go beyond the pleadings" and present specific facts to show that a genuine dispute exists).

As such, BLE has met its initial burden (and, it will herein) to show it is entitled to judgment on Counts I, III, IV (as to Defendants AVELA and LV), and VI of the SAC and Counts I and II of the Answer, the burden shifts to Defendants to submit admissible evidence demonstrating material fact disputes in order to avoid summary judgment.

In this Case, the Defendants will be unable to present any admissible evidence and / or cogent argument demonstrating that material fact disputes exist on Counts I and III – V of the

SAC and / or Counts I and II of the Answer; accordingly, summary judgment should be granted in favor of BLE as against Defendants in this action.

## V. ARGUMENT.

### A. The Defendants Violated Cal. Civ. Code § 3344.1.

The relevant portions of California's post mortem right of publicity statute provide as follows:

> "(a)(1) Any person who uses a deceased personality's name, … photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without prior consent from the person or persons specified in subdivision (c), shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, … the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by the injured party or parties, as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. … Punitive damages may also be awarded to the injured party or parties. The prevailing party or parties in any action under this section shall also be entitled to attorney's fees and costs."

Specifically, the Defendants, by their own admissions, used the image and / or likeness of a deceased personality (Bruce Lee) in commerce in California on or in t-shirts, posters, and / or the advertisement and / or solicitation of purchases for the t-shirts. Dkts 92, Ex 1 – 6, 47-4, 59-1, 59-2, 97, 98, and 113, ¶137 – 163; Minch Decl. ¶¶4-6. Under the California code, Defendants are liable to BLE for attorneys' fees, costs, and lost profits arising out of Defendants' illegal use of Bruce Lee's right of publicity. Cal. Civ. Code §3344.1.

#### 1. Bruce Lee is a "Personality" as Defined by California Law.

Under California's post mortem right of publicity statute, "personality" is defined as:

> "… any natural person whose name, voice, signature, photograph, or likeness has commercial value at the time of his or her death, whether or not during the lifetime of that natural person the person used his or her name, voice, signature, photograph, or likeness on or in products, merchandise or goods, or for purposes of advertising or selling, or solicitation of purchase of, products, merchandise,

goods, or services" … and shall include "… without limitation, any such natural person who has died within 70 years prior to January 1, 1985."

Cal. Civ. Code 3344.1(f)(4)(h).

Bruce Lee died prior to the enactment of the California statute; however, by the statute's plain meaning, as clarified in 2007, this is of no consequence.  Section 3344.1(f)(4)(p), clarified by the California state legislature on October 10, 2007, expressly states that "the rights recognized by this section are expressly made retroactive, including to those deceased personalities who died before January 1, 1985."

Perhaps most probative of the existence of Bruce Lee's post mortem rights is the fact that 12 years prior to the passage of the original 1985 California statute and 36 years prior to its 2007 clarification, the California probate court overseeing the administration of Lee's estate specifically recognized that Lee's deceased publicity rights were a valuable asset of Lee's estate based upon the immense popularity Lee had achieved during his lifetime.  *In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070; Minch Decl., ¶ 7.[2]

> **a.  Bruce Lee's right of publicity was valuable at the time of his death.**

Bruce Lee is a "personality" as defined by California law."[3]  Bruce Lee is the greatest icon of martial arts cinema and is, unquestionably, a key figure in American popular culture. *Time Magazine*, Heroes and Icons, *available at* http://www.time.com/time/time100/heroes/index.html (last visited December 8, 2009).  Absent the unprecedented popularity of Bruce Lee's body of film works[4], it is arguable whether the martial arts film genre would have ever influenced mainstream Western cinema which later went

---

[2] For ease of reference and review, BLE has provided the Court with a copy of the entire Bruce Lee probate file, both from the Los Angeles County Superior Court and the Hong Kong courts.
[3] Defendants themselves admitted that Bruce Lee's persona, from his death on, was valuable in documents filed by AVELA and LV in support of an opposition proceeding in the United Kingdom against BLE's United Kingdom trademark application. Minch Decl., ¶ 8.  BLE ultimately prevailed in that action.  Id.
[4] During his lifetime and, ironically, thereafter, in addition to his unprecedented fame as the world's premiere

on to produce Hollywood celebrities such as Chuck Norris and Steven Segal as well as such ultra-popular films as The Matrix trilogy, Lara Croft: Tomb Raider, and films starring Asian film celebrities Jackie Chan and Jet Li (in which Lee's influences are unmistakably evident). *Id.* Because of Bruce Lee's fame and notoriety, Lee was named by *Time Magazine* as one of the 100 most influential people of the 20th century. *Id.*

Additionally, Congress passed a commendation of Bruce Lee on July 18, 2012 wherein it was acknowledged that Bruce Lee, an American citizen, "… had and continues to have, an immeasurable impact on American and global popular culture through the important role he played in creating a bridge between cultures; championing values of self-respect, self-discipline, and tolerance in our Nation; and pioneering and cultivating the genres of martial arts, martial arts films, fitness, and philosophy in the United States and the world."   Minch Decl., ¶9.

Even before BLE was formally organized and prior to Bruce Lee's untimely death, Bruce Lee, himself, (as well as Bruce Lee's family just after Bruce Lee's death), expended countless resources and immeasurable funds in promoting, advertising, licensing for use, and protecting the Lee Right of Publicity from misuse such as that complained of in the SAC.  Dkt. 30 at ¶ 41; Dkt 64-1, ¶ 5; *In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070; Declaration of Kristopher Storti ("Storti Decl."), ¶ 4; Declaration of Linda Cadwell ("Cadwell Decl."), ¶ 5.

Accordingly, in fulfillment of its mission as envisioned by Bruce Lee himself prior to his death, BLE enters into selective licensing agreements for the use by third parties of the Lee Right of Publicity and related trademarks and copyrights.  Dkt. 30, ¶ 40; Storti Decl, ¶ 5.   Likewise, BLE actively and aggressively pursues any and all unauthorized third party users of the Bruce Lee right of publicity (and the trademark rights and copyrights owed by BLE), such as Defendants, who seek to illegally benefit from and / or trade off Bruce Lee's right of publicity to

---

martial artist, Bruce Lee appeared in over eleven (11) major motion picture films and a television series.

the detriment of and without BLE's prior authorization.  *Id.*

      **b.**      **Bruce Lee was a Domicile of California at the time of his death.**

At the time of Bruce Lee's death, though Bruce Lee died in Hong Kong, Bruce Lee was unquestionably a domicile of the State of California.  *In the Matter of the Estate of Bruce Lee, Deceased*, Case No. 602 070; Dkt 64-1, ¶ 4; Minch Decl., ¶ 7.

Bruce Lee died on July 20, 1973 in Hong Kong.  *The Internet Movie Database*, Biography for Bruce Lee, *available at* http://www.imdb.com/name/nm0000045/bio (last visited December 5, 2009).  However, because Bruce Lee was only in Hong Kong for work and not as a permanent resident, Bruce Lee's will was probated in Los Angeles County Superior Court, Los Angeles, California.[5] Dkt 64-1, ¶ 4; *In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070.  In the probate proceedings and by operation of California probate law (and, later, as codified by Cal. Civ. Code §990 in 1985), Lee's post mortem publicity rights were deemed a property right that descended to Lee's widow, Linda, and his children, Brandon and Shannon.  *In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070; Cal. Civ. Code § 990; Dkt 64-1, ¶ 4; Cadwell Decl., ¶¶ 4, 5.

The California probate court oversaw and directed the administration of Lee's Estate:  i) the retention of an agent (ZIV International, Inc.), to represent the Estate in the licensing and the protection of Bruce Lee's deceased publicity rights; ii) the institution of legal proceedings (and the settlement thereof) against, among other infringers, One Stop, Inc. for the unauthorized production, distribution, and sale of posters with Lee's image; and iii) the payment of Federal income and death and California income and inheritance tax which included the assessment of

---

[5] Bruce Lee's estate was opened in Los Angeles County Superior Court on or about March 29, 1974. *In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070.  Minch Decl., ¶ 7.  In turn, because Bruce Lee maintained property and there were matters that had to be dealt with in Hong Kong following his death, on advice of California counsel and those administrators of Bruce Lee's Estate providing advice to counsel, Linda (Lee) Cadwell, Bruce Lee's widow, opened probate proceedings in Hong Kong.  Minch Decl., ¶ 7; Cadwell Decl., ¶ 3.

the value of Lee's deceased publicity rights. *In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070; Dkt 64-1, ¶ 4; Minch Decl., ¶15.

Even if someone were to take the position today that Bruce Lee was domiciled anywhere other than California at the time of his death, on judicial estoppel principles they would be prevented from taking such a position. *Simon v. Safelite Glass Corp.*, 128 F.3d 68,72 (2d Cir. 1997) (citing *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993)); *In re Adelphia Recovery Trust*, No. 09-0799-bk, 2011 WL 420428 at *14 (2d Cir. Feb. 8, 2011). Of course, neither the family of Bruce Bruce Lee nor anyone associated with the family and / or BLE have taken a position other than Lee was a domicile of California at his death.

**2.      BLE is the rightful owner of the Bruce Lee Right of Publicity.**

At the time of his death, by operation of California probate law, Bruce Lee's assets, including his post mortem publicity rights, passed to Cadwell as 50% beneficiary and equally to son Brandon Lee (hereafter "Brandon") (now deceased) and daughter Shannon Lee (hereinafter "Shannon") as 25% beneficiaries. Cal. Civ. Code §3344.1(d)(1) and (4); Minch Decl., ¶ 7; *In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070. Adrian Marshall, long time counsel to Bruce Lee and, later, Cadwell and the Estate, represented the Estate and Cadwell in the California probate proceeding. Marshall also oversaw and actively participated in the administration of Lee's estate in the corresponding Hong Kong proceeding. *See generally* Cadwell Decl., ¶ 3, 5; *In the Matter of the Estate of Bruce Lee*, Deceased, Case No. 602 070; *In the Estate of Bruce Lee also known as Bruce Siu Yung*, The Supreme Court of Hong Kong.

At no time since Bruce Lee's death has Bruce Lee's post mortem publicity and other related intellectual property rights ever been owned by anyone other than the family of Bruce Lee (Cadwell, Brandon, and Shannon) or an entity created, owned, and / or managed, in whole, by Bruce Lee's family. *See generally* Cadwell Decl., ¶ 3 - 6. Specifically, from Bruce Lee's

11

death in 1973 until Brandon's death in March, 1993, the post mortem publicity rights were owned by Cadwell (50%) and Brandon and Shannon, equally (25%). Cadwell Decl., ¶ 6. Upon Brandon's death in 1993, by operation of California law, Lee's publicity rights were owned by Cadwell (75%) and Shannon (25%). Cadwell Decl., ¶ 6.

On or about January 1, 1999, Cadwell and Shannon organized Concord Moon, LLP, an Idaho Limited Liability Partnership ("CM Idaho"); CM Idaho's sole purpose was to own and oversee the commercial activities and protection of Bruce Lee's publicity rights and other assets and intellectual property rights associated with Bruce (and Brandon) Lee. Cadwell Decl., ¶ 6. Cadwell and Shannon assigned, in their entirety, their respective interests in Lee's publicity rights to CM Idaho. Cadwell Decl., ¶ 6.

In September, 2004, Cadwell and Shannon organized Concord Moon, LP, a California Limited Partnership ("CM California") with CM California's sole purpose, upon the eventual dissolution of CM Idaho, being to own and oversee the commercial activities and protection of Bruce Lee's post mortem property rights. Cadwell Decl., ¶ 6. Upon the dissolution of CM Idaho, all rights and assets of CM Idaho, including the publicity rights, were transferred, in their entirety, to CM California and, in return, CM California assumed all liabilities and obligations of CM Idaho. Cadwell Decl., ¶ 6.

Between 2008 and 2009, in furtherance of Cadwell's personal estate planning, Cadwell assigned and gifted to Shannon all of Cadwell's right, title and interest in CM California, including Lee's post mortem publicity rights. Cadwell Decl., ¶ 6. In June 2008, CM California was dissolved with all rights and assets assigned to, and all liabilities and obligations assumed by, BLE which was owned solely by Shannon. Cadwell Decl., ¶ 6. As such, BLE is the current owner of the Bruce Lee post mortem publicity rights (and other intellectual property rights associated with Lee). Cadwell Decl., ¶ 6-8.

12

Under the California right of publicity statute, persons claiming post mortem rights of publicity under Cal. Civ. Code § 3341.1 (formerly §990) are required to register those claims. Cal. Civ. Code § 3341.1(f). In 1985, prior to the formation of BLE, pursuant to Cal. Civ. Code §990, Cadwell, Brandon, and Shannon duly registered their interests in Lee's post mortem publicity rights with the California Secretary of State. Dkt 64-1, ¶ 5; Cadwell Decl., ¶ 6; Storti Decl., ¶ 3. At all times relevant to the chain of title of Bruce Lee's post mortem publicity rights, Lee's right of publicity was properly registered in accordance with California law and BLE is the currently registered holder of the Lee Intellectual Property under California Civil Code § 3344.1.[6] Storti Decl., ¶ 3; Dkt 64-1, ¶ 5.

It cannot be disputed that BLE, owned solely by Shannon, is the exclusive rights holder and proprietor of any and all commercial merchandising and allied rights relating to the use of Bruce Lee's name, image, likeness, persona, signature, mannerisms, sayings, voice, and / or photographs. Cadwell Decl., ¶ 6-8; Dkt 64-1, ¶ 3.[7]

### 3. The Defendants engaged in acts which violated Bruce Lee's right of publicity under the California right of publicity statute.

It is undisputed that each and every one of the Defendants has utilized the Bruce Lee right of publicity as defined under California law without BLE's prior express permission. Specifically, each and every one of the Defendants has used the name, image, and / or likeness of Bruce Lee, without BLE's permission, "… on or in products, merchandise, or goods (to wit, t-shirts, posters, and bobbleheads) or for the purposes of advertising or selling, or soliciting

---

[6] As codified by statute, the registration of the Bruce Lee right of publicity pursuant to California law serves three (3) purposes: (i) it provides third parties desiring to use the Bruce Lee right of publicity with notice of the existence and ownership of the Bruce Lee right of publicity, (ii) is a prerequisite to an award of damages for the infringement of a deceased celebrity's right of publicity under California code, and (iii) creates a rebuttable presumption as to the rightful owner of the Bruce Lee right of publicity. Cal. Civ. Code §3344.1(f)(1)-(4).

[7] In addition to the Bruce Lee right of publicity, BLE owns the trademark rights in and to certain related trademarks, including but not limited to BRUCE LEE, the Core Mark (a federally registered trademark, Registration Nos. 2734082, 2734084, 3604916, and 2885613 and symbolizes "Using No Way as Way, Having No Limitation as Limitation"), and Jeet Kune Do as well as copyrights in and to countless images and photographs of Bruce Lee and

purchases of products, merchandise, goods, or services (to-wit, the advertisement for sale of the shirts, posters, and bobbleheads on or in connection with the name, image, and / or likeness of Bruce prominently displayed) …;" as such, each and every one of the Defendants is "liable for any damages sustained by (BLE) …" who was injured as a result thereof.  Cal. Civ. Code §3344.1(a)(1).

California case law interpreting Cal. Civ. Code §3344.1 (and / or §990) is clear and instructive on liability involving the same or similar activities in which Defendants have been engaged in this Case.  *Comedy III Productions, Inc. v. Saderup*, 25 Cal.4[th] 387 (2001); *Hoffman v. Captical Cities, Inc.*, 255 F.3d 1180 (9th Cir. 2001); *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001).

> **a.    AVELA and LV licensed the Bruce Lee right of publicity without BLE's permission to at least 12 producers of infringing merchandise, all of whom used the Bruce Lee right of publicity on and / or in connection with posters, t-shirts, and bobbleheads.**

This court need look no further than Defendants' own Answer, Affirmative Defenses, and Counterclaims for AVELA and LV's admissions that it uses the image and / or likeness and persona of Bruce Lee without BLE's prior express authorization.[8]  Dkt 113, 14-17.

AVELA and LV have admitted, under oath, that it used and licensed for use the Bruce Lee right of publicity on or in connection with commercial products such as t-shirts, posters, and / or bobbleheads in the State of California. Dkts 92, Ex 1 – 6, 47-4, 59-1, 59-2, 97, 98, and 113, ¶137 – 163; Minch Decl., ¶ 4.   AVELA licensed the Bruce Lee right of publicity, without authorization, to third parties such as American Classics, Ata-Boy, Balz-Out, BC Ethic,

---

the world famous Bruce Lee archives. Storti Decl., ¶ 3; Dkt 64-1, ¶ 3.
[8] AVELA and LV attempt to pass responsibility for the production of posters bearing the name, image, and / or likeness of Bruce Lee to Trends International; however, it has been established that AVELA and LV's own assertions in this regard are erroneous.  In fact, AVELA and LV were the publisher of the posters on and with which Bruce Lee's name and / or persona was used, to be sold by Trends without BLE's prior express authorization. Minch Decl., ¶ 10.

Dragonfly, Freeze, Funko, Jem[9], Mad Engine, Marc Ecko Enterprises, Slick Designs, The House, and Trends International.  Minch Decl., ¶ 11.  Funko, which produced Bruce Lee bobbleheads without authorization and Trends International, which, in conjunction with LV and AVELA, produced posters using the image of Bruce Lee, the remaining LV and / or AVELA licensees produced t-shirts on and in connection with which Bruce Lee's right of publicity was used, without BLE's authorization.

In fact, being placed on notice of its infringement of the Bruce Lee right of publicity, being served with this action, being served by licensees of intent to invoke indemnity clauses as the result of BLE's assertion of its right to enforce BLE's rights to Bruce Lee's right of publicity (and various other intellectual property rights, including but not limited to copyrights, trademarks, and rights of association), and being served with and litigating this action, AVELA and LV continue to use Bruce Lee's right of publicity without authorization from BLE.  Minch Decl., ¶ 6; Storti Decl., ¶ 10.  Based upon LV's own admissions and continued use of Bruce Lee's name and persona, absent a court order strictly prohibiting AVELA and LV from using Bruce Lee's name and / or persona in commerce, AVELA and LV will continue its unabashed misuse of these intellectual property rights to the further irreparable and unjustified detriment of BLE.  Storti Decl., ¶ 10.

> **b.**  **TC sold t-shirts on or in connection with which the Bruce Lee right of publicity appeared in California.**

TC has admitted, under oath, that it sold and advertised for sale t-shirts on which Bruce Lee prominently appeared in the State of California in violation of Bruce Lee's right of publicity. On April 16, 2012, deposition testimony was taken by BLE of Lee Lurquin, TC Senior Buyer and 22 year employee of TC.  Dkt. 59-1; Minch Decl., ¶ 5. In the deposition, under oath, Mr.

---

[9] Jem, a licensed product manufacturer located in San Fernando, California, was the manufacturer of the t-shirts on and in connection with the Bruce Lee's right of publicity was used , and sold by TC and UO.

Lurquin confirmed that TC sold t-shirts, manufactured by Jem, bearing the image of Bruce Lee. Minch Decl., ¶ 5.  Specifically, Mr. Lurquin identified the t-shirt in question; that t-shirt bore a label indicating AVELA was the manufacturer of that t-shirt.  Minch Decl., ¶ 5.  Mr. Lurquin confirmed that the t-shirts bearing the likeness of Bruce Lee were sold by TC during the period July, 2008 – December, 2008. Mr. Lurquin likewise confirmed that these t-shirts were purchased from Jem Sportswear, a licensee of LV and AVELA, located in San Fernando, California. Minch Decl., ¶ 5.

Additionally, Alex Eaton, Senior VP System Administrator for TC, confirmed that t-shirts bearing the image of Bruce Lee were sold by TC; specifically, Mr. Eaton confirmed that JEM TES KUNG FU BLK [DPCI 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] in fact was the t-shirt bearing the Bruce Lee persona that was sold in TC in California.  Minch Decl., ¶ 5; Dkt 59-1, ¶4.  These were the same identification numbers that existed on the TC sales documents testified to by Mr. Lurquin during Mr. Lurquin's deposition.  Dkt 59-1, ¶4; Minch Decl., ¶ 5.  The t-shirts in question were sold in the State of California.  Minch Decl., ¶ 5.

In summary, TC violated the California right of publicity statute because TC purchased t-shirts from Jem Sportswear, a manufacturer of t-shirts located in San Fernando, California, and, in turn, sold the infringing t-shirts in the State of California.  TC used the image of Bruce Lee, without BLE's permission, on t-shirts and / or for the purposes of advertising or selling, or soliciting purchases of the t-shirts on which the image of Bruce Lee prominently appeared. Summary judgment is therefore proper as to TC on Count I of the SAC.

**c.      UO sold t-shirts on or in connection with which the Bruce Lee right of publicity appeared in California.**

UO has admitted, under oath, that it sold and advertised for sale t-shirts on which the Bruce Lee right of publicity prominently appeared in the State of California. From the period September, 2008 through March 2009, UO purchased approximately 5,346 "Bruce Lee

Filmstrip" t-shirts from Jem Sportswear, a t-shirt manufacturer located in San Fernando, California.  Dkt 59-2; Minch Decl., ¶ 4.  The t-shirt depicted in Exhibit 6 of the SAC was the same t-shirt purchased from Jem by UO; UO advertised the t-shirt in question, on line and elsewhere, as the "Bruce Lee Tee."  Minch Decl., ¶ 4; Dkt 92, Ex 6.

Between the periods November, 2008 and April, 2010, UO realized $110,537 in net revenue from its sale of the Bruce Lee Tee.  Minch Decl., ¶ 4.  In fact, even after BLE filed the First Amended Complaint against TC and UO on August 12, 2009, UO continued to purchase and sell the Bruce Lee Tee.  Minch Decl., ¶ 4; See generally Dkt 30.   In fact, UO had actual knowledge of the litigation and BLE's allegations with reference to the unauthorized Bruce Lee Tee at least as early as September 17, 2009.  Minch Decl., ¶ 12.  Moreover, Kelly Walker, Director of Planning and Allocation for UO, acknowledges in her sworn affidavit of November 16, 2009, that at that time, at least 1,110 Bruce Lee Tees were sold, exclusively by UO, throughout the United States and in California.  Minch Decl., ¶ 4; Dkts 59-2, 92, Ex. 5-6..

So, both before and after being served with the First Amended Complaint, UO purchased the Bruce Lee Tee from Jem Sportswear, a California company that manufactured the t-shirt under license with LV and AVELA.  Minch Decl., ¶ 4, 12.  In fact, the AVELA name is prominently affixed to the Bruce Lee Tee in question as a label of the Bruce Lee Tee.  Minch Decl., ¶ 4, Dkt 92, Ex 5-6.  While LV and AVELA have (wrongly) asserted that the individual depicted in the UO t-shirt in question was not Bruce Lee and, in fact, was an actor named Biao Yuen, LV and AVELA were either not truthful about that statement or, simply, wrong.  See generally Affirmation of Chan Mei Yi; Dkt 97, ¶5; Dkt 98, ¶8.  Regardless of whether the individual depicted in the Bruce Lee Tee sold by UO was, in fact, Bruce Lee, the Bruce Lee Tee was advertised in commerce for sale by UO, in California and elsewhere, as the Bruce Lee Tee and, under the California right of publicity statute, UO (and LV and AVELA) would be liable for

the commercial use of a likeness of Bruce Lee as well as for the commercial use of an actual image of Bruce Lee.  Cal. Civ. Code §3344.1(a)(1).  Furthermore, not only did UO utilize the image and / or persona of Bruce Lee, UO (and AVELA and LV) used Bruce Lee's name on hang tags and in advertisements for the shirts themselves.  Stephens Decl., ¶3.  Given the use of Bruce Lee's name and unmistakable image as used by UO, certainly, it cannot be disputed that whether or not the individual in the Bruce Lee Tee was, in fact, Bruce Lee, the image represents a likeness of Bruce Lee and UO advertised the shirt as depicting Bruce Lee, himself.

Based upon the foregoing, summary judgment is proper against Defendant UO as to Count I of the SAC.

### 4.    BLE was irreparably injured as a result of Defendants' unauthorized commercial use of Bruce Lee's persona.

Irreparable harm is harm that cannot be "prevented or fully rectified by final judgment." *Graham v. Med. Mut. Of Ohio,* 749 F.2d 293, 296 (7th Cir. 2001); *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir. 1984).  The purpose of right of publicity laws is to "allow a person to control the commercial value of his or her identity." *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 910 (7th Cir. 2004).  Publicity rights protect "an individual's interest in personal dignity and autonomy."  Restatement (Third) Unfair Competition, § 46 cmt. c. Further, "the right to prohibit unauthorized commercial exploitation of one's identity allows a person to prevent harmful or excessive commercial use that may dilute the value of the identity." *Id.*  In essence, publicity rights, as in this case, prohibit one from reaping what another has sewn.

In this regard, courts have long held that "a celebrity's property interest in his name and likeness is unique, and therefore there is no serious question as to the propriety of injunctive relief." *Ali v. Playgirl, Inc.,* 447 F.Supp. 723, 729 (S.D.N.Y. 1978) *citing Uhlaender v. Hendricksen,* 316 F.Supp. 1277, 1283 (D. Minn. 1970).

Similarly, damages caused by trademark (or similarly situated right of publicity)

infringement are "by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) *quoting Processed Plastic Company v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982).

In this case, the Defendants' unauthorized, willful, and, in the case of LV and AVELA, continuing use of Bruce Lee's right of publicity in intrastate commerce deprives BLE of the exclusive right use Bruce Lee's intellectual property rights as it, the family, sees fit, and the choice of which products, services, and / or businesses with which Bruce Lee is associated.

In addition, the owner of a post mortem publicity right is damaged when an infringer places the owner's reputation beyond its control even where no substantial loss of business is shown. *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976). The most corrosive and irreparable harm attributable to trademark (or here, right of publicity) infringement is the inability of the victim (BLE) to control the nature and quality of goods in the market. Declaration of Bob Goetz ("Goetz Decl."), ¶4; Storti Decl., ¶6-8; *Processed Plastic Co.*, 675 F.2d at 858.

On another level, BLE's licensees and, in turn, BLE is irreparably injured by Defendants' unauthorized use of the Bruce Lee right of publicity.  For instance, the release of unauthorized Bruce Lee products to big box retailers such as Target necessarily results in harm to BLE and BLE's licensees.  Stephens Decl., ¶4-5; Goetz Decl., ¶4; Storti Decl., ¶6-8. Specifically, when unlicensed / unapproved merchandise is released en masse on a test (or other) basis such as to TC or UO and if that product (especially as to the TC test in this Case) generally performs poorly in terms of sales, the result is that big box retailers will be significantly discouraged from releasing merchandise bearing the name, image, and / or likeness of Bruce Lee in the future whether or not the product, in whatever category, is under license. *Id.*

Finally, stating the obvious, the sale of unlicensed product absolutely diminishes the amount of revenue that can be realized by legitimate, authorized users of the Brue Lee right of publicity. Stephens Decl., ¶4-5; Goetz Decl., ¶4; Storit Decl., ¶6-8. Specifically, authorized licensees of the Bruce Lee right of publicity are required to compete in the marketplace against those unauthorized (and unchecked) users of Bruce Lee's right of publicity (such as, in this case, each and every one of the Defendants). Stephens Decl., ¶4-5; Goetz Decl., ¶4; Storti Decl., ¶6-8. As a result, the amount of revenue realized by licensees such as Trinity Products or Mad Engine is naturally reduced and, in turn, the amount of revenue paid to BLE on these licenses is likewise diminished.

**B.     Both of the Counterclaims Asserted by Defendants Should be Resolved by Summary Judgment in Favor of BLE.**

AVELA asserted two causes of action in tort against BLE:  i) intentional interference with contractual relations and ii) intentional interference with prospective economic advantage. Both causes are similar in nature.  Because there exists no issue of law or material fact that should be decided by a jury in this Case, both causes are ripe for and should be disposed of by summary adjudication. Both the Second and Seventh Circuits treat the torts of intentional interference with contractual relations and intentional interference with prospective economic advantage similarly; a choice of law analysis is not critical to the resolution of these claims.

**1.     BLE did not intentionally interfere with AVELA's legitimate contractual relations.**

To establish a claim for tortious interference with contractual relations under New York law (which the parties agree is applicable), under the facts specifically pled by AVELA, AVELA must establish: (1) a valid contract between AVELA and Trends; (2) BLE's knowledge of the contract between AVELA and Trends and corresponding inducement of a breach; and (3) resulting damage to AVELA. *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70

20

(1986); *Strobl v. New York Mercantile Exchange,* 561 F.Supp. 379, 386 (S.D.N.Y.1983); *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97, 99 (1956).

Initially in this analysis, it is clear that under New York law litigation or the threat of litigation can give rise to a claim for tortious interference with contractual relations. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 632, 406 N.E.2d 445, 448 (1980) (When the New York Court of Appeals considered the basis for this tort in 1980, it described the nature of the action and included civil suits among the "wrongful means" that could give rise to liability.)  Further, the *Guard-Life* decision expressly endorsed the provisions in the *Restatement (Second) of Torts* establishing this tort. *Id.* Under the *Restatement,* a lawsuit or the threat of a lawsuit is wrongful "if the actor has no belief in the merit of the litigation." *Restatement, supra,* § 767, comment c. It is also wrongful if the actor, having some belief in the merit of the suit, "nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication." *Id. See also Zilg v. Prentice-Hall, Inc.,* 717 F.2d 671, 677-78 (2d Cir.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984).

Based on the undisputed facts here, AVELA's first counterclaim fails on all three elements of a claim for tortious interference with contract under relevant New York law.  First, AVELA has never produced a copy of the Trends agreement (either in discovery to BLE or affixed to its Answer in support of Count I of its counterclaim).  It cannot be determined whether the alleged contract between Trends and AVELA was valid.[10]  Minch Decl, ¶ 13.

---

[10] One can speculate why AVELA failed to introduce or produce a copy of the Trends Agreement; specifically, Trends and AVELA's allegations as to the terms of its agreement with Trends are so diametrically opposite, it can be presumed that submission of the Trends agreement would unequivocally show that AVELA's allegations in its Answer were simply patently false.  Moreover, submission of that agreement would require AVELA to acknowledge that it not only licensed Bruce Lee's persona, it also actually manufactured goods bearing Bruce Lee's persona as Trends complained of; such a legal admission would unequivocally place AVELA in an even more untenable position.  So, for now, all we can do is speculate and review the Trends' invoices tendered by AVELA in discovery to piece together the true nature of the contractual relationship between Trends and AVELA.

Second, there is no cogent evidence that BLE was aware Trends was selling AVELA published merchandise on behalf of AVELA at the time BLE's letter was sent.  In fact, to the contrary, it is clear from BLE's internal communications and its communications with the "whistle blower" licensee that BLE had no knowledge of AVELA's involvement in the Trends posters.  Stephens Decl, ¶6.  Third, AVELA has produced nothing more than mere allegations of harm on its first counterclaim; that is, there is no evidence of actual harm.

Finally, as required by New York law for a successful claim of tortious interference with contract, BLE (i) did not threaten litigation in its letter, (ii) if, even under the most liberal reading of BLE's cease and desist letter, it can be determined that BLE threatened litigation (which, it didn't), BLE's "threats" were made in good faith and BLE has actually engaged in the litigation it threatened.  Not only were the threats made in good faith, but based upon AVELA's undisputed unauthorized use of the image, likeness, and / or persona of Bruce Lee, even though at the time BLE sent the letter it had no knowledge of AVELA's involvement in the products, BLE's claims were absolutely meritorious as argued herein. *Restatement, supra,* § 767, comment c.

Based on the foregoing, AVELA's first counterclaim utterly fails and should be adjudicated in favor of BLE on summary judgment.

### 2.    BLE did not intentionally interfere with AVELA's prospective economic advantage.

It is hornbook law that the actions complained of in a claim for intentional interference with prospective advantage must be wrongful. W. Prosser, Torts, § 130 at 951 (4th ed. 1971). *See Chris-Craft Industries. Inc. v. PiperAircraft Corp.*, 480 F.2d 341, 360 (2d Cir.), cert denied, 414 U.S. 910,94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *A&K Railroad Materials, Inc. v. Green Bay & Western Railroad*, 437 F.Supp. 636, 645-46 (E.D.Wis.1 977); see *Tom Oleskers Exciting World*

*of Fashion. Inc. v. Dun & Bradstreet, Inc.*, 16 Ill.App.3d 709, 714, 306 N.E.2d 549, 553 (1973), *rev'd on other grounds*, 61 111.2d 129, 334 N.E.2d 160 (1975).

Under New York law the cause of action for interference with prospective economic advantage requires a party's interference with a claimant's prospective business relations to be by wrongful means or that alleged malfeasant acted for the sole purpose of harming the claimant (see, *Glen Cove Assocs. v North Shore Univ. Hosp.*, 240 A.D. 2d 701, 702 (1997), *Iv denied* 91 N.Y.2d 801, 666 N.Y.S.2d 563, 689 N.E.2d 533 (1997); *NBT Bancorp v Fleet/Norstar Fin. Group*, 215 A.D.2d 990. (1995) *affd* 87 N.Y.2d 614 (1996)). "Wrongful means" includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure. *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*. 50 N.Y.2d 183, 191).

The core of AVELA's second counterclaim is the assertion that BLE had no justification to send the April 19, 2010 cease and desist letter to Trends International, allegedly one of AVELA's licensees.  Dkt 113, ¶¶ 160 – 161.  The April 13, 2010[11] cease and desist letter was justified.  BLE is the sole owner of Bruce Lee's post mortem right of publicity under Cal. Civ. Code §3344.1 and other various intellectual property rights associated with Bruce Lee.  Cadwell Decl., ¶5-8; Storti Decl., ¶2-3. BLE's April 13, 2010 letter merely correctly asserts BLE's claims to the rights it, in fact, owns and simply places Trends on notice that its sale of posters using the name and / or persona of Bruce Lee, without permission, was illegal.  Storti Decl., ¶9; Stephens Decl., ¶6.  Further, there is no evidence, anecdotally or otherwise, that BLE was even aware of any agreement (enforceable or not) between AVELA and Trends when BLE sent its cease and desist letter.  Storti Decl., ¶9; Stephens Decl., ¶6.  Further, BLE invited Trends to respond to the letter to potentially work out a resolution to BLE's allegations.  In fact, often times, exactly what

---

[11] The only letter sent to Trends International by BLE was a letter dated April 13, 2010; in its counterclaim, AVELA states the Trends letter was dated April 19, 2010. Dkt 113, ¶¶ 160 – 161.  AVELA is apparently incorrect as to the precise date of the Trends letter.

happens is infringers who have been contacted by BLE (and other rights holders) will ultimately enter into a license agreement with BLE for the lawful use of Bruce Lee's right of publicity. Stephens Decl., ¶6; Storti Decl., ¶9.

Perhaps even more importantly, Trends' response stated that it had not produced the poster in question, that AVELA was the publisher of the poster, and that Trends was merely buying inventory from AVELA and marketing the inventory pursuant to an agreement with AVELA (assertions not surprisingly wholly contrary to the assertions made by AVELA in its counterclaims). Stephens Decl., ¶6; Storti Decl., ¶9; see generally Dkt 113 at 14-17. AVELA has never produced a copy of the Trends agreement, nor was it attached to the Counterclaim, and LV refused to discuss the same in his deposition. Minch Decl., ¶13.

The actions taken by BLE in this instance were lawful, justified, and not meant to interfere with any business relationship, valid or not. AVELA has produced no evidence as to its actual relationship with Trends and / or whether BLE's assertions were indeed the proximate result of Trends' termination of the agreement with AVELA as contended by AVELA. For these reasons, the second counterclaim must fail on summary judgment.

C.    **Defendants' Design, Production, Distribution, and Sale of the Infringing Goods Constitutes Unfair Competition under 15 U.S.C. §1125(a).**

As understood by this Court, Count III of the SAC was a claim for endorsement under Section 43(a) of the Lanham Act. Dkt 111, 8. Perhaps the case that it most instructive in evaluating BLE's motion for summary judgment on Count III, regardless of jurisdiction, is the Second Circuit's opinion in *Allen v. National Video, Inc. Allen v. National Video, Inc.*, 610 F. Supp. 612 (SDNY 1985). In *Allen*, National Video used a photograph of a Woody Allen look a-like in an advertisement for National Video's retail stores; the photograph contained other characteristics that further evoked Woody Allen's personality. *Allen*, 610 F. Supp. at 617-619. The fact scenario in the Allen case is unmistakably similar to the matter at hand.

24

The Lanham Act prohibits false descriptions of products or their origins. §43(a) (15

U.S.C. §1125(a).  The Act is more than a mere codification of common law trademark

infringement whose purpose is "the protection of consumers and competitors from a wide variety

of misrepresentations of products and services in commerce." *Quoting Allen v. National Video,*

*Inc.*, 610 F. Supp. at 625.  The Lanham Act applies where certain uses may not qualify formally

as trademark infringement but, as here, involve unfair competitive practices resulting in actual or

potential deception. *SK&F, Co. v. Premo Pharmaceutical Laboratories*, 625 F.2d 1055, 1065 (3d

Cir. 1980; *CBS, Inc. v. Springboard International Records*, 429 F.Supp. 563, 567 (SDNY1976).

Successful claims of false endorsement include: 1) involvement of goods or services, 2) effect on

interstate commerce, and 3) a false designation of origin or false description of the goods or

services. *Id.* at 566.  This Court restated the "Springboard" requirements as: the defendant, (1) in

commerce, (2) made a false or misleading representation of fact (3) in connection with goods or

services (4) that is likely to cause consumer confusion as to origin, sponsorship, or approval of

the goods or services."  Dkt 111, 8-9 *citing Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455

(SDNY 2008).

This Court has already determined that false endorsement claims under § 43(a) of the

Lanham Act where a celebrity's image or persona is used in association with a product so as to

imply that the celebrity endorses the product are actionable.  Dkt. 111, 8-9; *5 J. Thomas*

*McCarthy on Trademarks and Unfair Competition* §28:15 (4th ed. 2011).

This Court acknowledges that courts around the country, including, as cited by this Court,

the District of Nevada in a case where AVELA and LV misappropriated the likeness of the late

internationally known Reggae star, Bob Marley, have determined the use of a deceased

celebrity's image and /or persona may validly give rise to a false endorsement claim under

§43(a). Dkt. 111, 9-10; *Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d

25

1148 (D. Nev. 2010).

In the application of the Lanham Act to BLE's claim herein, the issue at hand is not related to Defendants' use of any of BLE's registered trademarks; to the contrary, the issue at hand is Defendants' use of Bruce Lee's persona.  Dkt. 111, 10; generally, Dkt 92.

As has been established herein, BLE is the rightful owner of Bruce Lee's persona and each and every one of the Defendants have used Bruce Lee's persona, without authorization, on a variety of commercial products including t-shirts (as specifically plead in the SAC), posters, bobbleheads, writing instruments, and notebooks. Storti Decl., ¶10; Minch Decl., ¶¶ 4.  More so, as this Court noted … "[e]ven if Plaintiff had to allege a specific trademark, exhibits 3-6 show particular images of Bruce Lee [allegedly] used by Defendants without BLE's consent." Dkt 111, 10.   There is no dispute that Defendants' actions are clearly actionable under the Lanham Act.

Once it has been established (as it has here) that BLE is the owner of the "mark" in question (Bruce Lee's persona) and that Defendants used the mark, the final, definitive element of BLE's Lanham Act claim focuses on the likelihood of confusion. *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 626 (6thCir. 2000); s*ee, e.g., Meridian Mutual Insurance Company v. Meridian Insurance Group, Inc.*, 128 F.3d at 1115 *citing International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988) (other citations omitted); *see also Abdul-Jabbar v. GMC*, 85 F.3d 407 (9th Cir. 1996).

In *Landham*, the Sixth Circuit noted that:

A false designation of origin claim brought by an entertainer under §43(a) of the Lanham Act in a case such as this is equivalent to a false association or endorsement claim and the "mark" at issue is the plaintiff's identity. *Landham*, 227 F.3d at 626; *See also White*, 971 F.2d at 1399-1400; *Waits v. Frito-Lay*, 978 F.2d 1093, 1110 (9th Cir. 1992).

*Landham* established an eight-factor test for determining likelihood of confusion:  (i) strength of plaintiff's mark; (ii) relatedness of the goods; (iii) similarity of the marks; (iv) evidence of actual confusion; (v) marketing channels used; (vi) likely degree of purchaser care;

(vii) defendant's intent in selecting the mark; and (viii) likelihood of expansion of the product lines. *Id.* These guidelines have been used by courts only to assist in analyzing claims for false endorsement and imply no mathematical precision; also, a claimant need not show that all, or even most, of the factors listed are present in any particular case to prevail on a false endorsement claim. *Id.*

To prevail BLE does not have to (though it does) show that all eight *Landham* factors are met.[12] Specifically, (i) Bruce Lee is known by consumers throughout the world; (ii), (iii), and (v) each and every one of the Defendants are using Bruce Lee's persona on and in connection with the same products, side by side in the marketplace, as those (t-shirts) that are sold by BLE and / or its licensees, with BLE's express consent; (iv) there is evidence of actual confusion; (vi) there is likely little care exercised by purchasers of Bruce Lee t-shirts, whether or not those t-shirts were licensed; (vii) each and every one of the Defendants' intent in selecting the Bruce Lee mark was the notoriety of the mark, itself, and Defendants' desire to trade off the good will created and established in and to the Bruce Lee brand; and (viii) both BLE and Defendants produce, market, and retail products beyond just the t-shirts that are the subject of this litigation[13].

Each and every one of Defendants' unauthorized use of Bruce Lee's persona necessarily implies that BLE has endorsed or sponsored the unauthorized t-shirts. At the core of a claim for false endorsement under §43(a) is the misappropriation of another's intellectual property rights in such a manner as to imply that the rightful owner, proprietor, or licensee of the rights has endorsed the goods, services or products bearing the misappropriated property. See McCarthy, The Rights of Publicity and Privacy, §5:30 (2d ed. 2000).   BLE expends countless resources in

---

[12] The fact is, this case presents a rare circumstance where the evidence of infringement is so clear and therefore ripe for summary adjudication on Count III (as well as all other claims, direct or counter), all eight *Landham* elements are satisfied in this case.

[13] It has been established that AVELA and / or LV have produced, licensed, and / or retailed products such as posters, bobbleheads, pens, and notebooks bearing Bruce Lee's name and  / or likeness.  Likewise, BLE has licensed a wide variety of products on and / or in connection with which Bruce Lee's persona has been used.

the establishment and implementation of programs to develop, register, and protect the various

intellectual property assets owned by BLE (including but not limited to Bruce Lee's persona), all

of which serve to designate those goods and services distributed in interstate and international

commerce as associated with, approved by, and emanating from BLE. Cadwell Decl., ¶¶ 5; Storti

Decl., ¶¶ 4-5; SAC, ¶¶15, 29-31, 34.

Summary judgment is warranted as to all Defendants on Count III of the SAC.

> **D.    Each and Every One of the Defendants' Unauthorized Uses of Bruce Lee's
> Name, Likeness and / or Image Constitutes Unfair Competition Under the
> Common Law (As to Defendants AVELA and LV).**

The Court dismissed BLE's common law unfair competition claim (Count IV) as to TC

and UO.  Count IV remains ripe for summary judgment against AVELA and LV.

This Court noted in the order on the motion to dismiss, "The essence of unfair

competition under New York common law is 'the bad faith misappropriation of the labors and

expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the

goods.'" Dkt 107 at 11.

As demonstrated herein, at minimum, three (3) infringing shirts bearing the name,

likeness, and / or image of Bruce Lee were produced by Jem and Marc Ecko Enterprises, under

license with AVELA and LV, and sold throughout the United States on line, in Macy's Stores, in

TC stores, and in UO stores. Dkts 92, Ex 1 – 6, 47-4, 59-1, 59-2, 97, 98, and 113, ¶137 – 163;

Stephens Decl., ¶3.  Two styles of these shirts bore the AVELA label.  Stephens Decl., ¶3; Dkt

92, Ex 3-6;.  By AVELA's own expert report, consumers were actually confused (let alone,

"likely" confused) as to the sponsorship, origin, and / or endorsement of at least the shirts sold in

UO.  Minch Decl., ¶¶ 14.

It cannot likewise be disputed that AVELA and LV's efforts to trade off the good will

established in and to the Bruce Lee brand were in bad faith; AVELA and LV have continued to

license and attempt to license Bruce Lee's name, likeness, and image despite being placed on notice of its infringing activities and, perhaps even more offensively, despite the existence and ongoing status of this litigation.  Storti Decl., ¶¶ 10.

There simply can be no set of circumstances, in fact or at law, under which AVELA and LV can offer as justification for their continued, unabashed unauthorized commercial use of Bruce Lee's persona; Count IV should be resolved in favor of BLE on summary judgment.

### E.    Defendants Were Unjustly Enriched by Their Illegal and Infringing Actions.

BLE is the rightful owner of Bruce Lee's persona and other related intellectual property rights. Each of the Defendants has engaged in conduct which has unjustly enriched Defendants. See Dkt 93, ¶¶ 92-95.

"The Lanham Act extends trademark protection to related goods in order to guard against numerous evils in addition to restraints on the possible expansion of the senior user's market, including …, and unjust enrichment of the infringer."  J. McCarthy, *Trademarks and Unfair Competition*, § 24:5 at 177-81.

Additionally, under New York law, a claim for unjust enrichment can be a quasi contract claim that is based upon "an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex ae quo et bono* belongs to another."  *Miller v. Schloss,* 218 N.Y. 400, 407, 113 N.E. 337 (1916); *In re Chateaugay Corp.,* 10 F.3d 944, 957-58 (2d Cir.1993); *Marcus v. AT&T Corp. v. American Telephone and Telegraph Company*, 138 F.3d 46, 64 (2nd Cir. 1998).  The seventh and ninth circuits have recognized that damages for claims for unjust enrichment may be awarded if the defendant unjustly retained a benefit to plaintiff's detriment, and defendant's retention of the benefit violates the fundamental principles of justice, equity and

good conscience." *Fortech, L.L.C. v. R.W. Dunteman Co., Inc.,* 366 Ill.App.3d 804, 304 Ill.Dec.

201, 852 N.E.2d 451 (2006); *Vulcan Golf, LLC v. Google Inc.,* 552 F. Supp. 2d 752 (N.D. Ill.

2008); *Lauriedale Associates, Ltd. v. Wilson,* 7 Cal.App.4th 1439, 1448, 9 Cal.Rptr.2d 774

(1992) ("The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the

result of a failure to make restitution under circumstances where it is equitable to do so.");

*Dinosaur Development, Inc. v. White,* 216 Cal.App.3d 1310, 1314-1315, 265 Cal. Rptr. 525

(1989) (Unjust enrichment is "'a general principle, underlying various legal doctrines and

remedies,'" rather than a remedy itself.   ... It is synonymous with restitution.")

     Under both Lanham Act and quasi contractual theories of unjust enrichment (recognized

in both the second, seventh, and ninth circuits), Defendants have been unjustly enriched, to

BLE's detriment, by their admitted unauthorized and infringing uses of Bruce Lee's persona.

Defendants are liable to BLE, on summary judgment, pursuant to Count V of the SAC.

## VI.   CONCLUSION.

     Based upon the foregoing, this Court should award summary judgment as against each

and every one of the Defendants on Counts I, III, and V of the SAC, against Defendants AVELA

and LV on Count IV of the SAC, and in favor of BLE on Counts I and II of the Counterclaim.

Further this Court should enter a statutory damage award against each and every one of the

Defendants on Count I of the SAC as well as reasonable attorneys' fees and costs on Counts I

and III – V of the SAC and Counts I and II of the Counterclaim.  Finally, this Court should also

enjoin each and every one of the Defendants from further violations of Bruce Lee's right of

publicity and order the immediate surrender of all offending unlicensed property, wherever

situated.

DATED:  McCordsville, Indiana       SOVICH MINCH, LLP
        July 31, 2012

                                     */s/ Theodore J. Minch*

                                   _____
                                   Theodore J. Minch, Attorney No. 18798-49
                                   10099 Chesapeake Drive, Suite 100
                                   McCordsville, Indiana 46055
                                   Telephone:    (317) 335-3601
                                   Facsimile:    (317) 335-3602
                                   timinch@sovichminch.com

                                   Attorneys for Plaintiff Bruce Lee Enterprises, LLC

## CERTIFICATE OF SERVICE

        This is to certify that a copy of the foregoing Memorandum in Support of Bruce Lee Enterprises, LLC's Motion for Summary Judgment was forwarded this day to the following party representatives of record by placing a copy of the same via the Court's electronic filing system this 31st day of July, 2012:

Theodore J. Minch, Esq.                         Erach Screwvala, Esq.
tjminch@sovichminch.com                    erach@screwvalallc.com

Bonnie L. Mohr, Esq.                            Melissa Woo, Esq.
bonnie@mohresq.com                            melissa.wooallen@yahoo.com

                                 */s/ Theodore J. Minch*
              By: _____
                                   Theodore J. Minch (18798-49)
                                   SOVICH MINCH, LLP