Melissa W. Woo, Esq.
Admitted Pro Hac Vice
2647 Gateway Road, Suite105-550
Carlsbad, California 92009
Telephone:  877-787-4855
Facsimile:  877-787-6855
E-Mail: melissaw@counselatlaws.com

Erach Screwvala, Esq.
SCREWVALA LLC
244 Fifth Avenue, #E-2411
New York, New York 10001
Telephone: 212-252-2501
Facsimile: 773-897-2771
E-Mail: erach@screwvalallc.com

Attorneys for Defendants / Counterclaim Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE LEE ENTERPRISES,<br><br>        Plaintiff,<br><br>    v.<br><br>A.V.E.L.A., INC., and LEO VALENCIA, an Individual, URBAN OUTFITTERS, INC., and TARGET CORPORATION,<br><br>        Defendants. | Case No.:    1:10-cv-2333 LTS / AJP<br>Judge:       Hon. Judge Nathan<br><br><br>DECLARATION OF DR. BRUCE ISAACSON, D.B.A. |

I, Dr. Bruce Isaacson, D.B.A., declare as follows:

1. I am over eighteen years of age and have personal knowledge of the following facts. If called to testify, I could and would competently state as follows:

2. I am the owner and President of MMR Strategy Group ("MMR"), a marketing research and consulting firm, and have expertise in research, surveys, and marketing. For more than 35 years, MMR has provided marketing research and consulting, consisting primarily of the design, execution, and analysis of thousands of surveys, as well as expertise related to marketing and strategy. Our experience includes many surveys used in intellectual property litigation.

3. Over MMR's history, the firm has served such well-known organizations as Alberto-Culver, several regions of the American Automobile Association, Denny's, Farmers Insurance Group, Goodyear Tire & Rubber Company, Hewlett-Packard, Nestle USA, Inc., Ore-Ida Foods, Smart & Final Stores, the Hollywood Bowl, the UCLA School of Public Heath, Universal Studios, and many other organizations.

4. MMR has conducted research for studies involving a variety of products sold in consumer markets, and also regularly conducts research for retailers.

5. I was retained by Defendants in the above-entitled matter to design and conduct a survey measuring whether potential purchasers of graphic or screened t-shirts are likely to believe that Bruce Lee or a related entity (such as his family, estate, or managers) made, endorsed, or gave permission or approval to make the filmstrip t-shirt referenced in the plaintiff's Second Amended Complaint and bearing an image that may be, or may be perceived to be, Bruce Lee. A true and correct copy of my expert report, which describes the survey, is attached hereto as Exhibit 1 to this Declaration.

6. The design of the survey, including much of the screening criteria and certain survey questions, was based in part on a format used by Dr. Deborah Jay in another litigation matter involving t-shirts possibly bearing the image of Bob Marley (Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc. et al., a Nevada District Court case).

7. The format for the survey is consistent with the Eveready format for likelihood of confusion tests, which is widely recognized as appropriate to measure confusion involving well-known marks.

8. Potential respondents were screened to be representative of relevant consumers, using criteria such as shopping at Urban Outfitters or Target, and purchasing graphic or screened t-shirts. The survey database consisted of 534 interviews with qualified respondents; all respondents were randomly assigned to either a test cell or a control cell. Respondents in the test cell saw the filmstrip t-shirt sold by Urban Outfitters. A picture of the test shirt is attached as Exhibit 2 to my expert report.

9. Respondents in the control group saw a shirt identical to the test shirt except it was altered in three respects: (i) the filmstrip showed multiple pictures of a different Asian male conducting martial arts while wearing a martial arts costume; (ii) the hang tag

for the control t-shirt was edited to remove the words "Bruce L.," and (iii) Chinese writing on the front of the test t-shirt was removed. A picture of the control shirt is attached as Exhibit 2 to my expert report.

10. Using double blind survey procedures, respondents were asked a series of questions about the t-shirt they saw during the interview. The questions measured confusion as to source, as to endorsement, and as to permission or approval.

11. To measure confusion as to source, respondents were asked, "Who do you think made or put out this particular t-shirt?" Among both Urban Outfitters and Target shoppers, 4.1% of test cell respondents, and 1.1% of control cell respondents, responded that Bruce Lee or an entity or person related to Bruce Lee made or put out the t-shirt, resulting in a net confusion rate of 3.0%.

12. To measure confusion as to false endorsement, respondents were asked, "Who do you think endorsed this particular t-shirt?" In response, 9.0% of test cell respondents, and 1.5% of control cell respondents, responded that Bruce Lee or an entity or person related to Bruce Lee endorsed the t-shirt, resulting in a net confusion rate of 7.5%. (The net confusion rate related to endorsement of the t-shirt was either 7.5% or 9.4%, depending on the group of respondents used for this measure.)

13. To measure confusion as to permission or approval, respondents were asked, "Who do you think gave their permission or approval for this particular t-shirt to be made or put out?" In response, 22.9% of test cell respondents, and 15.0% of control cell respondents, responded that Bruce Lee or an entity or person related to Bruce Lee provided permission or approval, resulting in a net confusion rate of 7.9%.

14. I also calculated summary measures reflecting totals across the different types of confusion measured in my survey. For example, I calculated the total and net confusion as to source and permission or approval, as well as total and net confusion as to source, endorsement, or permission or approval. The levels of net confusion are identified on page 27 of my expert report and set forth in Table G of that report. The levels of net confusion range between 2.1% and 9.4% for the individual measures. For the summary measures, the range is 8.9% to 10.1% for the net confusion calculation that matches the calculation used by Dr. Deborah Jay in *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc. et al.* and excludes endorsement, or 11.6% to 12.0% for the calculation that includes endorsement.

15. In my experience, the net measures of likelihood of confusion measured in my survey are generally below levels which would be routinely considered significant.

I declare under penalty of perjury the foregoing is true and correct.

Executed this 26th day of July, 2012 in Encino, California.

_____
DR. BRUCE R. ISAACSON, D.B.A.