UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

BRUCE LEE ENTERPRISES, LLC,

                                       Plaintiff,

            - against -

A.V.E.L.A., INC., and LEO VALENCIA, an individual,
URBAN OUTFITTERS, INC. and TARGET
CORPORATION,

                         Defendants.

-----------------------------------------------------------------------x

Index No.: 1:10-cv-2333
(AJN)(AJP)

ECF CASE

           :

           :

           :

           :

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MELISSA W. WOO, ESQ., *pro hac vice*
2647 Gateway Road, Suite 105-550
Carlsbad, California 92009
Tel: (877) 787-4855
Fax: (877) 787-6855
E-mail: melissaw@counselatlaws.com

and

SCREWVALA LLC
244 Fifth Avenue, Suite #E-241
New York, New York 10001
Tel: (212) 252-2501
Fax: (773) 897-2771
E-mail: erach@screwvalallc.com

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ................................................................................................ 2

   A.   **BLE Cannot Establish that Defendants Violated Cal. Civ. Code § 3344.1** ................. 2

     1.   BLE Cannot Meet Its Burden in Establishing that it is the Rightful Owner of the Lee Right of Publicity**.** ................................................................................................ 2

     2.   Bruce Lee Was Not a Domciliary of California at the time of his Death. ...................... 5

     3.   BLE's Claims are Preempted by the Copyright Act. ...................................... 8

     4.   The First Amendment Precludes BLE's Claims.. .......................................... 9

     5.   BLE's State ROP Claim Predominates the Action. ...................................... 12

     6.   California's Post Mortem Right of Publicity Statute, As Applied, Is Unconstitutional. 12

     7.   BLE Should Not Be Awarded an Injunction because It Was Not Irreparably Injured. . 13

   B.   **BLE Cannot Establish A Claim for False Endorsement Claim Under 15  U.S.C. § 1125(a).** ................................................................................................ 14

   C.   **BLE's Claim for Unfair Competition Under the Common Law Fails** ....................... 19

   D.   **BLE Cannot State a Claim for Unjust Enrichment.** ................................................. 20

   F.   **Triable Issues of Material Fact Exist on AVELA's Counterclaims.** ........................... 21

III.   CONCLUSION ................................................................................................ 23

**Cases**

*A. B. Leach & Co. v. Peirson*, 275 U.S. 120 (1927) .................................................................... 4

*Allen v. National Video, Inc.*, 610 F. Supp. 612 (SDNY 1985) .................................................... 15

*AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.,* 84 F.3d 622 (2d Cir. 1996) ......... 7, 8

*Barber v. Varleta*, 199 F.2d 419 (9th Cir. 1952) ........................................................................ 6

*Bates v. Long Island R.R. Co.,* 997 F.2d 1028 (2d Cir.1993) ......................................................... 7

*Cairns v. Franklin Mint Co.*, 107 F.Supp.2d 1212 (C.D. Cal. 2000) ........................................... 15

*Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013 (C.D. Cal. 1998) ................................. 16, 17, 18

*Cairns v. Franklin Mint Company*, 120 F.Supp.2d 880 (C.D. Cal. 2000)..................................... 5

*Cher v. Forum Int'l*, 692 F.2d 634 (9th Cir. 1982) ...................................................................... 10

*Comedy III Productions v. Gary Saderup, Inc.*, 25 Cal.4th 387 (2001) ........................................ 10

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).............................................................. 14

*Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc.*, 688 F.Supp.2d 1148 (D. Nev. 2010) ........ 18

*Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.,* 661 N.Y.S.2d 948 (Sup. Ct. 1997)................... 4

*Guglielmi v. Spelling-Goldbert Prods.*, 25 Cal.3d 860 (1979). .................................................... 10

*Harper & Row Publishers, Inc. v. Nation Enterprises* 723 F.2d 195 (2d Cir. 1983) ................ 8, 9

*Hart v. Electronic Arts, Inc.* 808 F.Supp.2d 757 (D.N.J. 2011) ............................................ 11, 12

*In re Cindy B.*, 237 Cal. Rptr. 677 (Cal. Ct. App. 1987) .............................................................. 13

*In re Marriage of Buol*, 705 P.2d 354 (Cal. 1985) ...................................................................... 12

*In re Marriage of Heikes*, 899 P.2d 1349 (Cal. 1995) ................................................................ 13

*In re Marriage of Siller*, 231 Cal. Rptr. 757 (Cal. Ct. App. 1986) ............................................... 13

*In re Paramount Pictures Corp.*, 1982 WL 52018 (Apr. 9, 1982) ............................................... 18

*Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 1998 U.S. Dist. LEXIS 15902, No. 95-CV-0508, 1998

    WL 704112 (E.D.N.Y. Oct. 7, 1998).................................................................. 23

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001)....................................... 6

*Kirby v. Sega of America*, 144 Cal.App.4th 47 (2006). ............................................... 11

*Landham v. Lewis Galoob Toys, Inc.* 227 F.3d 619 (6th Cir. 2000)............................... 18

*Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619 (6th Cir. 2000)............................... 16

*Lent v. Doe*, 47 Cal. Rptr. 2d 389 (Cal. Ct. App. 1995) .............................................. 12

*Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986)................................................................. 6

*Liebig v. Superior Court*, 257 Cal. Rptr. 574 (Cal. Ct. App. 1989).............................. 12

*N.L.R.B. v. Walton Mfg. Co.*, 286 F.2d 26 (5th Cir. 1961) .......................................... 4

*Owens v. Huntling*, 115 F.2d 160 (9th Cir. 1940)......................................................... 6

*Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2d Cir. 1990) ........................................ 16, 17

*Pirone, MacMillan, Inc.,* 894 F.2d 579, 584-85 (2d Cir. 1990). .................................. 17

*Playtex Products. Inc v. Georgia-Pacific Inc.*, 2003 U.S. Dist. LEXIS 13981 (S.D.N.Y. 2003) 20

*Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012) ....................... 19

*Remington Arms Co. v. Liberty Mut. Ins. Co.,* 810 F.Supp. 1420 (D.Del.1992) ............ 4

*Simon v. Safelite Glass Corp.,* 128 F.3d 68 (2d Cir. 1997) .......................................... 7

*Simon v. Safelite Glass Corp.,* 128 F.3d 68 (2d Cir.1997) ........................................... 8

*Sly Magazine, LLC v. Welder Publications LLC,* 346 Fed. Appx. 721, 2009 U.S. App. LEXIS

    20964 (2d Cir 2009)................................................................................... 20

*U.S. Fid. & Guar. Co. v. Treadwell Corp.,* 58 F. Supp. 2d 77 (S.D.N.Y. 1999)............ 8

*Wedeen v. Cooper*, 1998 U.S. Dist. LEXIS 10490, No. 97 Civ. 8621 (JSM), 1998 WL 391117

    (S.D.N.Y. July 14, 1998) .......................................................................... 23

*Weible v. United States*, 244 F.2d 158 (9th Cir. 1957) .................................................... 6

*Weinberger v. Romero—Barcelo*, 456 U.S. 305 (1982) ............................................. 14

*Wichinsky v. Mosa*, 109 Nev. 84 (1993) ................................................................. 23

*Winter v. D.C. Comics,* 30 Cal.4th. 881 (2003) ................................................. 10, 11

*Wolff v. Rare Medium Inc*., 171 F. Supp. 2d 354, 2001 WL 1448476 (S.D.N.Y. 2001) ............. 22

**Statutes**

15 U.S.C. § 1125(a) ............................................................................. 15, 16, 19

16 C.F.R. § 255.1(c) .................................................................................... 20

17 U.S.C.A. § 301 ........................................................................................ 8

17 U.S.C.A. §§ 102-103 .................................................................................. 8

1909 Copyright Act ....................................................................................... 9

74 FR 53124-01 ........................................................................................... 20

Cal. Civ. Code § 3344.1 ................................................................................. 13

F.R.E. 601 ................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ........................................................................... 17, 19

**Other Authorities**

1 Nimmer on Copyright (1978) § 1.01[B], 1-9 ........................................................... 9

13B C. Wright, A. Miller, & E. Cooper, Federal Practice And Procedure § 3613, at 544-45 (1984 & Supp. 1986) .................................................................................... 6

31A C.J.S. Evidence § 400 ................................................................................ 4

31A C.J.S. Evidence § 447 ................................................................................ 4

J. McCarthy on Trademarks and Unfair Competition § 28:14 (4th ed. 2009) ........................... 15

J. McCarthy, 2 Rights of Publicity and Privacy § 11:22 (2d ed) ..................................... 13

Restatement (Second) Of Conflicts §§ 18-20 (1971) ...................................................................... 6

Defendants A.V.E.L.A., Inc. ("AVELA"), Leo Valencia ("Valencia"), Urban Outfitters, Inc. ("UO") and Target Corporation ("Target"), respectfully submit this Memorandum of Law in Opposition to the Motion for Summary Judgment filed by Bruce Lee Enterprises, LLC ("BLE").

## I. INTRODUCTION

BLE seeks summary judgment on its claims for violation of the California Right of Publicity statute, False Endorsement under the Lanham Act and common law, and unjust enrichment under New York Law.  In an attempt to hide the fundamental flaws in its case, BLE has resorted to using colorful rhetoric to describe actions purportedly taken by Defendants.  Even BLE's rhetoric, however, cannot mask the fundamental flaws in its case.

First, BLE cannot demonstrate that it is the exclusive owner to the Bruce Lee Right of Publicity ("Lee ROP").  In an attempt to repair the "hole" in the Lee ROP chain of title, BLE has created and submited "new" evidence.  The "new" chain of title theory is substantiated only by a self-serving declaration, and is uncongnizable given the discovery delinquencies.   Second, BLE has not submitted any admissible evidence to demonstrate that Lee died a domiciliary of California. Rather, BLE posits that because Lee's estate was probated in California, Lee was a domiciliary of California at the time of his death.  The unrefuted evidence, however, substantiates that Lee and his family sold their family home in California, gave away their personal belongings in California, and moved to Hong Kong so Lee could pursue his career as an actor.  The unrefuted evidence also demonstrates that Lee never made any affirmative statements about his intent to move back to California, although he discussed the possibility of moving back to California or Washington.  That possibility, however, is insufficient to show that he was a domiciliary of California at the time of his death.  Third, the Lee Estate sold and relinquished

any rights it had into the films, film titles and in character performances by Lee when it sold all of the shares Lee held in Concord Productions.  Fourth, even if BLE could establish that it owned the Lee ROP and that Lee died a domiciliary of California, BLE's claim for violation of the California ROP would still be defeated by the First Amendment and preempted by the Copyright Act.

With respect to BLE's Lanham Claim for false endorsement, common law unfair competition and unjust enrichment, the claims are also fundamentally flawed for the same reasons that BLE's ROP claim is flawed.  Additionally, BLE cannot demonstrate Defendants' use of any name, image, or likeness of Lee causes confusion as to source, sponsorship or approval.  The only reliable evidence on this issue demonstrates that no such confusion exists.

As to AVELA's counter-claims, triable issues of fact exist warranting a denial of summary judgment on those claims.  For these reasons and as fully set forth below, BLE's Motion for Summary Judgment should be denied.

## II.     ARGUMENT

### A.     BLE Cannot Establish that Defendants Violated Cal. Civ. Code § 3344.1

1.     <u>BLE Cannot Meet Its Burden in Establishing that it is the Rightful Owner of the Lee Right of Publicity</u>**.**

BLE has the burden of demonstrating that it is the exclusive rights holder of the Bruce Lee ROP. BLE, however, cannot satisfy this burden.  As part of their written discovery requests, Defendants requested that BLE produce all documents, which establish its claim to ownership of the Lee ROP.  While BLE produced some documents that it believed established its claim to ownership of the Lee ROP, the documents produced by BLE failed to establish each and every chain, beginning with Lee and ending with BLE.  In particular, BLE produced documents, which

purportedly demonstrated that the Lee ROP was transferred to his estate upon his death. (Dkt. No. 190-14.)  Subsequently, in 1985, Brandon Lee, Shannon Lee and Linda Lee registered the Lee ROP in California and divided the rights up amongst themselves. (Dkt. No. 190-1.) According to the registrations, Brandon Lee claimed to own a 25% interest in the Lee ROP, Shannon Lee claimed to own a 25% interest in Lee ROP, and Linda Cadwell (formerly Linda Lee) claimed to own a 50% interest in the Lee ROP. (Dkt. No. 190-1.)     Subsequent to the 1985 filing, the chain of title becomes murky.   Defendants can surmise based on the document production that on January 1, 1999, Cadwell formed Concord Moon LLP to "own and oversee the commercial activities and protection of the Lee ROP and other assets and intellectual property rights associated with Bruce [Lee]," which were purportedly listed in Schedule C to the agreement and purportedly included the Lee ROP (Dkt. No. 190-14; Dkt. No. 172) However, despite repeated requests by Defendants, Schedule C has never been produced.  As such, it remains unclear what, if anything, Concord Moon LLP received in relation to the Lee ROP and what it purportedly transferred in the future.  Moreover, Brandon Lee claimed to own a 25% interest in the Lee ROP and it remains unclear where his purported interest was transferred.

Indeed, upon receipt of BLE's production, Defendants provided BLE with an opportunity to supplement its production to establish the chain of title.   BLE, however, never provided additional documents. Acknowledging its inability to satisfy this burden, BLE has now submitted "new evidence" through the testimony of Linda Cadwell (formerly Linda Lee) ("Cadwell"). Cadwell's declaration, however, is self-serving, and should not be admitted into evidence to demonstrate the validity of the chain of title to the Lee ROP.[1]  Our Supreme Court has stated, "A

---

[1]     In essence, the rule excluding self-serving declarations is meant to prevent the manufacture of evidence, so that in cases such as this one, essential documents demonstrating a

man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove." *A. B. Leach & Co. v. Peirson*, 275 U.S. 120, 128 (1927). This is precisely what BLE seeks to accomplish through use of the Cadwell declaration. (Dkt. No. 175, Decl. of Cadwell, Dkt. No. 172 ¶ 6.) However, it is well established that in most cases, "a party cannot make evidence for him- or herself by his or her own declarations." 31A C.J.S. Evidence § 400; *see also* F.R.E. 601. Additionally, it is generally accepted that "declarations made by a person in possession of such property as to the history and source of title are inadmissible…and such declarations are not competent to sustain or destroy a record title." 31A C.J.S. Evidence § 447; *see also Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.,* 661 N.Y.S.2d 948, 950 (Sup. Ct., N.Y. Co. 1997) (holding hearsay testimony to the existence of insurance documents was "a chain of support with no anchor. Like a parrot repeating words without any understanding of their meaning, each case in the chain cites a standard whose origin or justification is never made apparent."), citing *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 810 F.Supp. 1420, 1424 (D.Del.1992). Consequently, because Cadwell's declaration is insufficient to establish the validity of the chain of title to the Lee ROP, BLE cannot meet its burden of demonstrating that it is the exclusive rights holder to the Lee ROP.

In addition to the fractured title history relating to the Lee ROP, the undisputed evidence reveals that the Lee Estate relinquished and sold all of the shares held by Lee in Concord Productions in exchange for receipt of $2,700,000.  (Dkt. No. 196-2.) As a consequence, Lee's estate relinquished any copyrights held by Lee to the films he appeared in, the titles to the film, and the characters he portrayed in the films. The relinquishment of such rights by the Lee Estate is further substantiated by the BLE standard Merchandising License Agreement, which excluded

---

key fact of the case, are ensured to be true. 31A C.J.S. Evidence § 400; *see also N.L.R.B. v. Walton Mfg. Co.*, 286 F.2d 26 (5th Cir. 1961).

any rights by the licensee to use any titles to Bruce Lee films or performances or in-character film or TV depictions of Bruce Lee. (Dkt. No. 190-8, 9.)  As a result of the sale of such rights by the Lee Estate, any ROP rights Lee contends to have were assigned or waived by the sale of Lee's shares in Concord Productions.

2. <u>Bruce Lee Was Not a Domciliary of California at the time of his Death.</u>

The "right of publicity," which protects the right to control the commercial value of one's name or likeness in commercial contexts, is governed by individual state laws and is not a uniform federal right.  In California, only decedents who were domiciled in California at the time of their death may bring a right of publicity claim for sales of allegedly unauthorized merchandise in California.  *See, Cairns v. Franklin Mint Company*, 120 F.Supp.2d 880, 882-886 (C.D. Cal. 2000).

In its motion, BLE asserts Lee was unquestionably a California domiciliary at the time of his death.  In support of this contention, BLE references the California probate proceedings and then summarily concludes that probate proceedings constitute per se evidence that Lee was only in Hong Kong for work and not a permanent resident.  While the probate proceedings may evidence the existence of property in the state of California, the proceedings do not constitute admissible evidence of Lee's domiciliary at the time of his death. *See* Response and Objection to BLE's Rule 56 Statement No. 3.

Nevertheless, BLE neglects to mention the plethora of evidence that demonstrates that Lee was a domiciliary of Hong Kong at the time of his death.  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001). Put another way, "A person residing in a given state is not necessarily domiciled there.'" *Id.* (quoting *Kanter*, 265 F.3d

at 857); *see also, Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile"). A person may only have one domicile at a time and thus, "a person's old domicile is not lost until a new one is acquired." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (*citing Barber v. Varleta*, 199 F.2d 419, 423 (9th Cir. 1952), and Restatement (Second) Of Conflicts §§ 18-20 (1971)). "A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id*. (citing *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940); 13B C. Wright, A. Miller, & E. Cooper, Federal Practice And Procedure § 3613, at 544-45 (1984 & Supp. 1986)). Among the factors courts consider in determining domicile are an individual's "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Id*. (citations omitted).

Here, the overwhelming evidence establishes that Lee died a domiciliary of Hong Kong. At the time of Lee's death, Lee and his spouse, Cadwell and two children's main residence was in Hong Kong. Lee and Cadwell sold their home in California shortly after Lee relocated his family in Hong Kong. (Dkt No. 191 ¶¶ 31-32.) Lee's personal property, including his gym, library and Mercedes Benz automobile were also located in Hong Kong. (Dkt No. 191 ¶ 32; See also, Woo Dec., ¶ 2, Exhibit 1.[2]) Lee and Cadwell maintained their joint bank accounts at the

---

[2]        "Woo Dec., ¶_" refers to the Declaration of Melissa Woo dated August 24, 2012.

Peninsula Bank in Hong Kong.  (Dkt No. 191 ¶ 34.)  Lee was also in the process of purchasing a Rolls Royce automobile in Hong Kong, although the sale was not finalized due to his untimely death. (Woo Dec., ¶ 2, Exhibit 1.) Finally, Lee's film production company and primary asset, Concord Productions, was located in Hong Kong.  (Dkt No. 191 ¶ 34.)

In contrast, Lee did not maintain in California any real or personal property or any significant assets. As substantiated by the Hong Kong and California probate proceedings, the majority of Lee's assets were maintained in Hong Kong. (Dkt No. 191 ¶ 42.) Moreover, Cadwell admitted in her deposition testimony that she and Lee talked about moving from Hong Kong, but Lee never made any affirmative statements regarding his intent to move back to California.  (Dkt No. 191 ¶ 46.)  Rather, California was discussed as an option along with Washington. (Dkt No. 191 ¶ 46.)  Accordingly, because Lee did not die a domiciliary of California, BLE, the purported successor to the Lee ROP, may not assert a claim for violation under California's ROP statute.

In its motion, BLE also misapplies the doctrine of judicial estoppel in an effort to preclude Defendants from asserting that Lee died a domiciliary of Hong Kong.  The doctrine of judicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding. *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 71 (2d Cir. 1997), *citing Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1037-38 (2d Cir.1993). A party invoking judicial estoppel must show that (1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner. *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.,* 84 F.3d 622, 628 (2d Cir. 1996) (*citing Bates,* 997 F.2d at 1037 and holding a company's statement in the current proceeding was not inconsistent with the prior proceeding, and thus the company was not estopped); *Simon,* 128 F.3d at 71–72 (2d Cir.1997);

*U.S. Fid. & Guar. Co. v. Treadwell Corp.,* 58 F. Supp. 2d 77, 92 (S.D.N.Y. 1999). Judicial estoppel essentially "attempts to insure the sanctity of the oath and the integrity of the judicial process." *Bates,* 997 F.2d at 1037.

Applying the *AXA Marine* standard*,* the doctrine of judicial estoppel is inapplicable in this action for two reasons. First, the party against whom judicial estoppel is being asserted (Defendants) did not advance an inconsistent factual position in a prior proceeding about Bruce Lee's domicile. Second, the probate court did not "adopt [a] prior inconsistent position" regarding Bruce Lee's domicile at the time of his death.  In fact, the probate court record is devoid of any statements made by the Court in reference to Lee's domicile.  Rather, the probate court records merely assessed the value of Lee's estate in California. (Dkt. No. 180, 181, 183.) Therefore, since the court never made any affirmative statement regarding Lee's domicile at the time of his death and AVELA never asserted an inconsistent position in a prior proceeding, the principles of judicial estoppel do not operate to preclude Defendants from asserting that Lee died a domiciliary of Hong Kong.

### 3.   BLE's Claims are Preempted by the Copyright Act

"The Copyright Act [17 U.S.C.A. § 301] sets out the test for preemption of that state statutory or common law which may conflict with the federal policies embodied in the Act. … First, the work of authorship in which rights are claimed must fall within the 'subject matter of copyright' as defined in §§ 102 and 103 of the Act." *Harper & Row Publishers, Inc. v. Nation Enterprises* 723 F.2d 195, 199–200 (2d Cir. 1983), *revd. on other grounds*, 471 U.S. 539 (1985)). Second, if the state law creates " 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106,' [fn. omitted]" it is preempted. *Id.*; *see also* 1 Nimmer on Copyright (1978) § 1.01[B], 1-9). "When a

right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights," the state law claim must be deemed preempted.  *Harper & Row Publishers, Inc.*, 723 F.2d at 199-200.

The images at issue in this action are images of characters portrayed by Lee, which are captured in movie posters and other publicity materials related to the advertising and marketing of the films *Way of the Dragon* and *Game of Death*.   The movie posters and other publicity materials, while copyrightable, are in the public domain because the materials lacked the copyright notice required by the Copyright Act.[3]   Thus, despite the fact that BLE has labeled their claim a misappropriation of right to publicity, BLE is merely seeking to prevent AVELA from exhibiting a copyrightable work that has fallen into the public domain.   Consequently, BLE's claim is "equivalent to an exclusive right within the general scope of copyright" and is therefore, barred by the Copyright Act.

Furthermore, because the images at issue fell into the public domain, AVELA lawfully acquired the rights to use the images and thus, the alleged violation of publicity rights cannot be based on such use.  It is undisputed that the Lee Estate sold the rights to the films as part of the Hong Kong probate proceedings and thus, cannot now use ROP law to circumvent its lack of copyright ownership in the characters portrayed by Lee.

4.    The First Amendment Precludes BLE's Claims.

Even assuming for the sake of argument that BLE is the rightful owner of the Lee ROP and that the UO t-shirt was found to embody some protectable attribute of Lee, BLE's claim for

---

[3]    Under the 1909 Copyright Act, federal statutory copyright protection attached to original works only when those works were 1) published and 2) had a notice of copyright affixed.  If no notice of copyright was affixed to a work and the work was "published" in a legal sense, the 1909 Copyright Act provided no copyright protection and the work became part of the public domain.

violation of the Lee ROP would nonetheless be barred by the First Amendment.  The California Supreme Court has cautioned that "[t]he right of publicity has a potential for frustrating" constitutionally protected expression.  *Comedy III Productions v. Gary Saderup, Inc.*, 25 Cal.4th 387, 397 (2001).  To protect expressive works, the Court "has subjected the 'right of publicity' under California law to a narrowing interpretation which accords with First Amendment values." *Cher v. Forum Int'l*, 692 F.2d 634, 638 (9th Cir. 1982).   In *Guglielmi v. Spelling-Goldbert Prods*., Justice Bird emphasized that these protections apply to all expressive works.  25 Cal.3d 860, 867-68 (1979).

The California Supreme Court reaffirmed the test for determining whether the use of a celebrity's image is an expressive work that is protected by the First Amendment.  The inquiry "is whether the celebrity likeness is one of raw materials from which an original work is synthesized, or whether the depiction . . .of the celebrity is the very sum and substance of the work in question."  *Winter v. D.C. Comics,* 30 Cal.4th. 881, 888 (2003) (quoting *Comedy III*, 25 Cal.4th at 406).  "[I]n other words," a court must evaluate whether the work "containing a celebrity's image is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness."  *Id*.

It is important to note that the court's focus is not whether the plaintiff's likeness has been transformed physically in the defendant's work, but on whether the work "contain[s] significant creative elements that transform [it] into something more than mere celebrity likeness." *Id.*

The California Court of Appeal applied the *Winter* test in *Kirby v. Sega of America*, 144 Cal.App.4th 47, 50 (2006).  In *Kirby*, the lead singer of Deee-Lite claimed that the publisher of the video game Space Channel 5 misappropriated her likeness to create the character "Ulala."

*Id.* at 53.   The court disagreed.   While the court accepted that the character looked like the plaintiff and dressed and danced similarly to her, the court emphasized that she was only one element in a complex video game.   *Id.*   Because those aspects of the plaintiff's person were only a part of the raw material from which the game was synthesized, and were not the game's "very sum and substance," the court held that defendant's use was transformative, and thus constitutionally protected.

In *Hart v. Electronic Arts, Inc*. 808 F.Supp.2d 757 (D.N.J. 2011), summary judgment was awarded in favor of a college player's putative class action suit alleging unlawful misappropriation of his likeness and identity for a commercial purpose because the manufacturer's First Amendment right to free expression outweighed the player's right of publicity.   There, defendant produced a video game called *NCAA Football,* which allowed users to manipulate the action of over 100 college football teams and thousands of virtual players in a virtual world with simulated games.   *Id.* at 761. The college teams presented are identifiable by name as well as through the use of trademarks such as uniform designs and logo.   *Id.* at 762.   The virtual players are identified by jersey number and position.   *Id.*

In granting summary judgment, the court reasoned that the game included several creative elements apart from Hart's image.   The court even went further to conclude that [e]ven focusing on Hart's virtual image alone, it is clear that the game is transformative and that it is not the user's alteration of Hart's image that is critical.   *Id.* at 785.   Rather, defendants work as a whole transformed Hart's image by adding other elements to it.   *Id.*

The same analysis applies here.   The t-shirt sold by UO reveals a filmstrip image that is arranged in a manner to invoke the image of a film reel and to demonstrate the movement and athleticism of the martial artist.   In addition, even though the alteration of the image is not

11

critical to the analysis of whether the work is transformative, the images on the t-shirt sold by UO were distressed to invoke a vintage feeling.

5. BLE's State ROP Claim Predominates the Action.

It is patently evident from BLE's motion that its state claim for violation of the Lee ROP predominates this action.  Indeed, more than fifty (50%) percent of BLE's brief is devoted to this claim.  Coupled with BLE's expert's admission that the Lee ROP is the primary intellectual property right of BLE, this Court should decline to exercise jurisdiction over the matter.

6. California's Post Mortem Right of Publicity Statute, As Applied, Is Unconstitutional.

While California courts have upheld retroactive legislation that affects procedural matters, like the statutes of limitations, (*see, Liebig v. Superior Court*, 257 Cal. Rptr. 574, 576 (Cal. Ct. App. 1989); *Lent v. Doe*, 47 Cal. Rptr. 2d 389, 393 (Cal. Ct. App. 1995)), they have struck statutes when the law affected substantive rights and fails the required balancing test. *See, In re Marriage of Buol*, 705 P.2d 354, 358-62 (Cal. 1985) (holding that retroactive application of a California statute would substantially impair a substantive vested property right without due process of law), superseded by statute, Stats. 1986, ch. 49, § 1, p. 115, as recognized in *In re Marriage of Heikes*, 899 P.2d 1349, 1354 (Cal. 1995); *In re Marriage of Siller*, 231 CaL Rptr. 757,767 (Cal. Ct. App. 1986) ("The due process clauses of the state and federal Constitutions, in their 'substantive' aspect, provide checks on the government's power to act unfairly or oppressively."); *In re Cindy B*., 237 Cal. Rptr. 677, 684 (Cal. Ct. App. 1987).

Here, AVELA and Valencia's use of Lee's images was unimpeded since 1983, before the California legislature enacted Cal. Civ. Code § 3344.1. Section 3344.1 expressly creates a "property right", Cal. Civ. Code §3344.1(3)(b), not merely a procedural mechanism like a statute of limitations:  "The rights recognized under this section are property rights, freely transferable,

in whole or in part, by contract or by means of trust or testamentary documents..."  Under the weighing analysis required under the California Constitution, if the California legislature intended it to be applied retroactively, it would be unconstitutional because it takes away Valencia's/AVELA's longstanding right to use Lee's name and image which it acquired through its reliance on the former statute.

           7.    <u>BLE Should Not Be Awarded an Injunction because It Was Not Irreparably Injured.</u>

In order to state a claim for irreparable injury, BLE must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. J. McCarthy, 2 Rights of Publicity and Privacy § 11:22 (2d ed). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero—Barcelo*, 456 U.S. 305, 311–13, (1982)).

Before *eBay* was decided, courts assumed a Plaintiff suffered irreparable injury in intellectual property infringement cases. However, following *eBay*, the presumption of irreparable injury is no longer the rule.  *See eBay, Inc.,* 547 U.S. at 391-92.  (holding that "this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.") Rather, the Supreme Court concluded that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity." *Id.* at 394.

Even though the *eBay* case discussed copyright infringement, the same principles apply to the matter at hand with Bruce Lee's ROP, as both are intellectual property infringement cases. In this case, BLE should not be awarded a permanent injunction for several reasons, each of which is discussed in detail above. In short, the injunction would be inequitable because it would require AVELA to cease licensing artwork that they had been using since the mid-eighties, violate AVELA's rights to use film strip image under the fair use doctrine, and award BLE when the facts do not establish BLE owns the Bruce Lee ROP.

### B.    BLE Cannot Establish A Claim for False Endorsement Claim Under 15 U.S.C. § 1125(a).

BLE's claim for false endorsement is predicated upon its allegation that Defendants' use of Lee's image on t-shirts and other apparel constitutes a false designation of origin. BLE's unfair competition claim is premised on allegations that Defendants have violated 15 U.S.C. § 1125(a) by using images and other indicia of Lee on T-shirts and other apparel.

BLE's § 1125(a) claim is a "celebrity endorsement" claim, which alleges Defendants' use of any image of Lee infringed upon Plaintiffs' trademark rights in Lee's persona.  However, a claim under § 1125(a) is only actionable if the use of the image is unauthorized. Unpermitted use of a person's identity for commercial purposes is not enough.  Even unauthorized use of one's persona or identity merely to draw attention to a product or advertisement will not falsely imply endorsement. J. McCarthy on Trademarks and Unfair Competition § 28:14 (4th ed. 2009).  As a California Court succinctly stated when discussing the unauthorized use of the persona of Princess Diana,

> "It is clear that not all uses of a celebrity's image are actionable under § 1125(a).  Only uses which suggest sponsorship or approval are prohibited. Unlike the broader right of publicity, which is infringed by the 'unpermitted use of a person's identity' containing  'no false inference that plaintiff endorses or approves the product,' § ll25(a) prohibits only false endorsement, not mere use of an image or name."

*Cairns v. Franklin Mint Co*., 107 F.Supp.2d 1212, 1214 (C.D. Cal. 2000) (Cairns II) (emphasis in original).

Thus, in order to prevail, BLE must prove more than unauthorized commercial use of Lee's image.  Specifically, BLE must demonstrate that any such use falsely suggested that BLE endorsed Defendants' apparel.  In its motion, BLE relies on *Allen v. National Video, Inc.*, 610 F. Supp. 612 (SDNY 1985) to support its celebrity false endorsement claim.  In *Allen*, a photograph of a Woody Allen look alike was used for advertisement for National Video's retail stores and the photograph contained other characteristics that evoked Woody Allen's personality.  *Allen*, 610 F. Supp. at 617-19.

This action, however, is distinguishable from *Allen*.  In *Allen*, the question presented was whether consumers may falsely believe that a living celebrity, whose likeness is being used, actually endorsed or sponsored the defendant's product.  In this case, however, Lee is not living. BLE is not a celebrity, but an entity owned by one of Lee's children.  The public could not be confused into believing that Lee sponsored or endorsed any of the Defendants' T-shirts because Lee died more than 30 years before any such apparel existed.   Moreover, Defendants sale of products bearing Lee's image is vastly different from using a celebrity's likeness in an advertisement since the use of Lee's image does not imply endorsement by BLE and does not implicate the source-identification purpose of trademark protection. The results of Dr. Isaacson's survey affirm this point. (Dkt. No. 185.) Thus, the claim falls outside the scope of § 1125(a).

BLE next asserts that it has satisfied all eight factors set forth in *Landham v. Lewis Galoob Toys, Inc*., 227 F.3d 619, 626 (6th Cir. 2000).   However, other than concluding that "each and every one of Defendants' unauthorized use of Bruce Lee's personal necessarily implies that BLE has endorsed or sponsored the unauthorized t-shirts," BLE has not set forth any

evidence establishing likelihood of confusion.  Nevertheless, the only reliable survey evidence establishes that there is no likelihood of confusion between AVELA's goods and BLE's goods. BLE did not retain an expert to rebut the findings of AVELA's expert and thus, BLE cannot satisfy its burden of showing likelihood of confusion.

Even more fatal to BLE's § 1125(a) claim are the court's decision in *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 584-85 (2d Cir. 1990) and *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013 (C.D. Cal. 1998) (Cairns I). In particular, the Second Circuit has held that the use of a dead celebrity's name and image on a product does not support a Lanham Act claim. *Pirone,* 894 F.2d at 584-85. In *Pirone*, the defendant used Babe Ruth's name and image in a calendar it sold, without approval from Babe Ruth's daughter.  The Second Circuit held that the image of Babe Ruth was the subject matter of the calendar and no consumer could believe that Ruth (or Ruth's estate) sponsored or was the source of the calendar.  *Id.*

Similar to the image of Babe Ruth on a calendar, the use of Lee's image on the goods depicted in the SAC does not indicate the source of the goods or that BLE sponsored the goods. The images of Lee are part of the goods and using Lee's name merely describes the goods.  (Dkt. No. 191 ¶ 80.)  Moreover, the source of the goods here is clearly indicated in Ex. 3 of the First Amended Complaint as being from AVELA.  (Dkt No. 191 ¶ 80.)  *See Pirone*, 894 F.2d at 584 (there was no likelihood of confusion because the defendant stated that it was the source of the calendar).

In *Cairns*, executors of the estate of Princess Diana (the "Estate") and the trustees of a Princess Diana memorial fund (the "Fund") asserted several claims, including a § 1125(a) claim, against the Franklin Mint and others based on defendants' advertising and sales of jewelry, plates, and dolls bearing Diana's image and name.  The *Cairns I* court stated, "neither the

availability nor the parameters of a false endorsement claim brought by the estate of a celebrity

have been established." *Id*. at 1032.  The court found that plaintiffs' complaint survived a motion

to dismiss under Fed. R. Civ. P. 12(b)(6), but noted:

> "At the outset, it appears to the Court that one could theoretically assert a claim for false
> endorsement by a deceased celebrity (e.g., advertising might falsely suggest a particular
> product was endorsed by the celebrity before his or her death, and that plaintiffs have
> adequately alleged that defendants' advertising and products are likely to falsely suggest
> Princess Diana's endorsement of defendants'  products.   Nonetheless it seems unlikely
> that the public would be confused as to whether Princess Diana endorsed the Franklin
> Mint's products in light of her premature and unexpected death. Presumably recognizing
> the fragility of such a claim, plaintiffs focus almost exclusively on their contention that
> defendants are falsely implying that plaintiffs endorse defendants' products....[T]he real
> question is ... whether use of a particular deceased celebrity's persona is likely to cause
> confusion 'as to approval of [the defendants]_goods, services, or commercial activities by
> another person [,]' here, the Estate or the Fund. "

*Cairns I*, 24 F.Supp.2d at 1032. (emphasis added).

While the *Cairns I* court recognizes that one could  "theoretically" assert a claim for false

endorsement involving a deceased celebrity where it could be alleged and shown that the

defendants falsely represented that the deceased celebrity had actually endorsed the products

while he or she was alive, that is impossible here.  Lee died 30 years before Defendants first used

his image, and, moreover, Defendants never falsely implied or suggested through any activity

that Lee ever endorsed the products when he was alive.

While BLE has cited *Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc*., 688 F.Supp.2d

1148 (D. Nev. 2010) in support of its claim that a the use of a deceased celebrity image and/or

persona may give rise to a false endorsement claim, as demonstrated above, *Pirone,* which is

controlling in this jurisdiction, holds otherwise.  Nevertheless, *Fifty-Six Hope Road Music, Ltd*.,

is distinguishable because the plaintiff in that case retained a survey expert to demonstrate

confusion as to source, sponsorship, or approval.  *Id*. at 1153.  In this matter, however, the

extrinsic evidence demonstrates that the only survey elicited empirical evidence that an

insignificant percentage of consumers view the particular t-shirts as endorsements.  BLE did not retain an expert to rebut such evidence and therefore, cannot meet its burden on summary judgment.[4]

Moreover, images on t-shirts may be perceived as purely ornamental.  *See, In re Paramount Pictures Corp.*, 1982 WL 52018 (Apr. 9, 1982).  BLE has not and cannot set forth any evidence to establish to the contrary that any of the t-shirts which it alleges to have infringed on the Lee ROP as well as other intellectual property rights are perceived to be endorsements rather than ornamental.

Finally, Defendants have a complete defense to BLE's §1125(a) claim.  For the same reasons why BLE's state ROP claim fails, BLE's §1125(a) claim also fails.  First, the Lee estate has relinquished all of its rights to the films, film titles and in-character performances by Lee.  Second, any purported use of Lee's image arising out of the UO t-shirt is precluded by the First Amendment.   Third, any BLE's false endorsement claim under §1125(a) is barred by administrative preemption.   In *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), Pom Wonderful LLC ("Pom") initiated a lawsuit against Coca–Cola in 2008, alleging that Coca–Cola misled consumers to believe that its Pomegranate Blueberry brand juice consisted primarily of pomegranate and blueberry juices even though it mostly consisted of apple and grape juices. *Id.* at 1174.  Pom claimed this alleged misrepresentation was a violation of the false advertising provision of the Lanham Act, which authorizes suit against those who use a false or misleading description or representation about any goods. *See* 15 U.S.C. § 1125(a). Coca-Cola filed a motion to dismiss Pom's false advertising claims under Fed. R. Civ. P. 12(b)(6), and the

---

[4]     Alternatively, the multifactor test for likelihood of confusion renders summary judgment disfavored.  BLE fails to set forth any credible evidence demonstrating satisfaction of the eight *Landham* elements other than its bold unsupported conclusion that "the evidence of infringement is so clear." *See Landham v. Lewis Galoob Toys, Inc.* 227 F.3d 619 (6th Cir. 2000).

district court granted Coca-Cola's motion on the basis that the claim required the court to interpret and to apply FDA regulations on juice beverage labeling, a function which was reserved for the FDA. *Id.* The Ninth Circuit affirmed the district court's ruling, holding that Pom's claims that Coca-Cola used false and misleading language on its labels of Pomegranate Blueberry juice was not actionable under the under the Lanham Act because it was preempted by FDA Regulations. *Id.* at 1179.

The logic applied by the Court in *Pom Wonderful* is applicable here because the FTC has been entrusted with promulgating and enforcing rules on celebrity endorsements. FTC's requirements regarding celebrity endorsements state "the endorser must have been a bona fide user of it at the time the endorsement was given." 16 C.F.R. § 255.1(c). Furthermore, in 2009, the FTC amended its guidelines for celebrity endorsements to hold celebrities liable for products they endorsed. *See, e.g.* 74 FR 53124-01. Given the rationale behind enacting the new FTC guidelines and the fact Congress entrusted the FTC to regulate these matters, it is clear the intent was to give the FTC more control over enforcing and regulating celebrity endorsements. For these reasons, the Court should find that Plaintiffs' false endorsement claim is preempted by the FTC guidelines.

### C.      BLE's Claim for Unfair Competition Under the Common Law Fails

In order to succeed on its common law unfair competition claim, BLE must show (i) either actual confusion or a likelihood of confusion and (ii) bad faith on the part of the defendants. *Sly Magazine, LLC v. Welder Publications LLC,* 346 Fed. Appx. 721, 723, 2009 U.S. App. LEXIS 20964, at *6 (2d Cir 2009). The common law claim of unfair competition shares many of the same elements with a Lanham Act claim of false designation of origin and trademark infringement, including proof of actual confusion to recover damages, and proof of likelihood of confusion for equitable relief. *Playtex Products. Inc v. Georgia-*

*Pacific Inc.*, 2003 U.S. Dist. LEXIS 13981, at *25 (S.D.N.Y. 2003), aff'd, 390 F.3 158 (2d Cir 2004) (citations omitted).

BLE asserts that two of the three (3) purportedly infringing t-shirts, bear the name, likeness, and/or image of Bruce Lee.  BLE then misrepresents the findings of AVELA's expert and concludes that consumers were actually confused as to the sponsorship, origin, and/or endorsement of at least the shirts old in UO.  Contrary to any such statement, AVELA's expert, Bruce Issacon opined that based on the results of the survey he conducted, in his experience, the measures set forth in the survey results are generally below levels, which would be routinely considered significant.  (Dkt No. 185.)

Next, without evidence, BLE boldly asserts that it is indisputable that AVELA and Valencia's efforts to trade off the good will established in and to the Bruce Lee brand were in bad faith.  AVELA and Valencia, however, contend that because BLE cannot establish that it is the rightful owner of any Lee ROP or of the characters portrayed by Lee in various films, they are not violating California ROP or the Lanham Act.  Even assuming that BLE can establish that it is the rightful owner of the Lee ROP and of the character portrayed by Lee, as discussed above, any such use by AVELA and Valencia of Lee's in-character performances by are protected by the First Amendment, preempted by the Copyright Act and administrative preemption.  In addition, BLE has not and cannot meet its burden of showing that AVELA and Valencia's use of any of Lee's images is likely to cause confusion as to source or sponsor.  As such, BLE's motion for summary judgment on this claim should be denied.

### D.    BLE Cannot State a Claim for Unjust Enrichment.

For the reasons set forth above, BLE cannot establish that it is the rightful owner of the Lee ROP as well as other related intellectual property rights.  While BLE cites McCarthy in support of its claim for Unjust Enrichment, the quote cited by BLE simply sets forth the policy

rationale for extending trademark law to related goods.  There is no such claim for Unjust Enrichment under the Lanham Act and nor is one even pleaded in BLE's Second Amended Complaint.

As for New York law, BLE did not "place in the possession of one person money, or its equivalent," and "restitution" of that specific fund is not being sought.  As such, BLE cannot meet its burden of establishing a claim for unjust enrichment and summary judgment in favor of BLE on this claim should be denied.  At a minimum, the claim should be dismissed against Target because Target did not sell any t-shirts, which purportedly depicted Lee in New York. (Dkt No. 191 ¶ 99.)

### F.     Triable Issues of Material Fact Exist on AVELA's Counterclaims.

Under New York law, a plaintiff asserting a claim of tortious interference with contract must establish four elements: "(1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's intentional inducement of the third party to breach the contract, and (4) damages."  *Wolff v. Rare Medium Inc.*, 171 F. Supp. 2d 354, 2001 WL 1448476, *3 (S.D.N.Y. 2001) (internal quotation marks and citations omitted).

Here, a valid contract existed between AVELA and Trends International.  Indeed, BLE admits in its motion that there were invoices between AVELA and Trends International.  The existence of these invoices alone demonstrates that a contractual relationship existed between AVELA and Trends International.[5]  Otherwise, there would be no basis for AVELA to invoice Trends International.

---

[5]      AVELA did not produce a written agreement because a written agreement does not exist between the two parties.  Rather, the parties had a contractual relationship wherein Trends International would request certain images from AVELA and AVELA would provide the images to Trends International and Trends International would prepare a purchase order on the images. Declaration of Leo Valencia, dated August 27, 2012,  ¶¶  3-4. ("Valencia Dec.").

BLE interfered with that contract. The New York Court of Appeals has defined "wrongful or improper means" to include "physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *Id.* (quoting *Guard-Life Corp. v. S. Parker Manufacturing Corp.*, 50 N.Y.2d 183, 406 N.E.2d 445, 449, 428 N.Y.S.2d 628 (N.Y. 1980)). "Dishonesty and unfair means are [, however,] . . . sufficient to show wrongful means." *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 1998 U.S. Dist. LEXIS 15902, No. 95-CV-0508, 1998 WL 704112, at * 16 (E.D.N.Y. Oct. 7, 1998) (citing *Wedeen v. Cooper*, 1998 U.S. Dist. LEXIS 10490, No. 97 Civ. 8621 (JSM), 1998 WL 391117, at *3 (S.D.N.Y. July 14, 1998)). Here, BLE sent a cease and desist letter to Trends International, causing Trends International to breach its agreement with AVELA. Due to BLE's intentional interference with AVELA's agreement with Trends International, Trends International breached its agreement with AVELA and Trends International did not pay AVELA $4,850.00 ($5,000 x .97) that it was required to pay under the contract. Valencia Dec.,  ¶ 6.

To state a claim in Nevada for interference with prospective economic advantage, a plaintiff must establish (I) a prospective contractual relationship between the plaintiff ad a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) and actual harm. *Wichinsky v. Mosa*, 109 Nev. 84 (1993).  AVELA has a prospective contractual relationship with Trends International.  Valencia Dec., ¶7.  The relationship was prevented by virtue of BLE's delivery of a cease and desist letter to Trends International. As a result, AVELA loss the amount of $43,650 (which is what it would have

received from Trends International if it had printed an additional 45,000 copies of the Poster).

Valencia Dec., ¶ 7.

BLE also knew of the relationship between Trends International and AVELA. In or about June 2009, Leo Valencia had a conversation with Kristopher Storti. During this conversation, Mr. Valencia voiced his displeasure that BLE had been contacting Trends International and asked Kristopher Storti to cease contact with Trends International. Declaration of Leo Valencia in Support of Defendants' Opposition in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, ¶ 8. Thus, BLE knew of the relationship between AVELA and Trends International before the cease and desist letter was sent.

BLE did not have justification to send the April 19, 2010 cease and desist letter to Trends International. Namely, as demonstrated above, BLE cannot establish that it is the sole owner of the Lee ROP and various other intellectual property rights associated with Lee.

## III.   CONCLUSION

Based upon the foregoing, this Court should deny BLE's motion for summary judgment in its entirety.